**UNITED STATES of America,**
**Appellant,**

v.

**L. R. FOY CONSTRUCTION COMPANY, Inc., Valley State Bank, Syracuse, Kansas, Tri-State Insurance Company, Tulsa, Oklahoma, and Herbert A. Stumm, Appellees.**

**No. 6751.**

United States Court of Appeals
Tenth Circuit.

Feb. 15, 1962.

Moshe Schuldinger, Atty., Dept. of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott and George F. Lynch, Attys., Dept. of Justice, and Newell A. George, U. S. Atty., and Robert M. Green, Asst. U. S. Atty., on the brief), for appellant.

George Templar, Arkansas City, Kan. (P. C. Frazee, Syracuse, Kan., Earle N. Wright and Ted M. Templar, Arkansas City, Ark., with him on the brief), for Valley State Bank and Tri-State Ins. Co., appellees.

No appearance for L. R. Foy Const. Co., Inc., and Herbert A. Stumm, appellees.

Before BRATTON, HUXMAN and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The United States appeals from a judgment entered in an interpleader action brought by L. R. Foy Construction Company (Foy) and claims that the trial court erred in subordinating its claims for taxes due from Stumm (taxpayer) to the claims of Valley State Bank and Tri-State Insurance Company (herein referred to as Bank and Surety respectively).

Foy held the principal contract for the construction of a high school building at Garden City, Kansas, and subcontracted certain masonry work to the taxpayer. The Bank financed the taxpayer's operations and on September 7, 1954, took from him an assignment of all sums due under the subcontract. Notice of the assignment was given to, and accepted by, Foy on September 23, 1954. Surety executed a contract completion bond for the taxpayer in which Foy was named as obligee.

Federal taxes in various amounts with accrued interest were assessed against the taxpayer in the period May 8, 1955, to September 21, 1956, and lien notices thereof were filed. For the purposes of this decision it is important to note only the first assessment as to which notice of lien was filed on May 18, 1955, and on which the unpaid balance is $2,896.49 plus interest.

At the time of the execution of the assignment the taxpayer owed $6,000 to the Bank. Thereafter the Bank advanced further sums and payments were made on account. At the time of the filing of the first notice of federal tax lien, the taxpayer owed the Bank $3,510 plus interest.

At the time of trial the taxpayer's indebtedness to the Bank was $6,453.39 plus interest.

Pursuant to its bond, Surety on October 7 and December 30, 1955, paid a total of $1,025.22 to the suppliers of materials to the taxpayer for use in the performance of the subcontract.

Foy brought an interpleader alleging the conflicting claims of the Bank, the Surety and the taxpayer and paid $2,522.45 into court.

An order was entered on the motion of the Bank making the United States a party and it then appeared and asserted its tax claims. The court found that the total amount due to the taxpayer from Foy was $5,545 plus interest. The Surety conceded that its claim was subordinate to that of the Bank. An appropriate judgment was entered awarding a first priority to the Bank's claim. This exhausted the fund.

Under § 6321 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 6321, the United States has a tax lien upon "all property and rights to property" of the taxpayer. By the provisions of § 6322, 26 U.S.C.A. § 6322, this lien arises at the time of the assessment of the tax but under § 6323, 26 U.S.C.A. § 6323, the lien is not valid "as against any mortgagee, pledgee, purchaser, or judgment creditor" until notice thereof shall have been filed as therein provided.

In Aquilino v. United States, 363 U.S. 509, 513–514, 80 S.Ct. 1277, 4 L.Ed. 2d 1365, it was held that state law controls the determination of the legal interest of a taxpayer in property sought to be reached by a federal tax lien and federal law determines the priority of competing liens asserted against the property. As we pointed out in United States v. Chapman, 10 Cir., 281 F.2d 862, 868, the Aquilino decision does not decide whether state or federal law governs in determination of the existence of the status of mortgagee, pledgee, purchaser or judgment creditor within the purview of § 6323. The meaning of those terms as used in a federal statute is a question

of federal law and was so treated by us in the Chapman case.[1]

The property right involved here is the right to payment by Foy for work done by the taxpayer under his construction contract. The holding of the trial court that such payment was due in the amount of $5,545 plus interest is not contested. The Bank claims that the taxpayer had divested himself of all right and title thereto by his assignment and hence, at the time of the notice of the tax lien, he had no property or property rights in the payment subject to that lien. The United States answers that the Bank was not a purchaser within the purview of § 6323.

The Kansas Supreme Court has held that a valid assignment passes all the assignor's title and interest to the assignee[2] and that after assignment the assignor has no interest which can be reached by creditors, other than the assignee, in proceedings against the obligor.[3] However, that court has also recognized the rule that an assignment that is made as collateral security for a debt gives the assignee only a qualified interest in the assigned chose, commensurate with the debt secured even though the assignment is absolute on its face.[4]

The assignment made by the taxpayer to the Bank provided that if he paid the Bank what he then owed and the sums thereafter to be advanced, the assignment was void. The president of the Bank testified that the assignment was made "as security for advancement of funds that we made to him to meet payrolls."

In United States v. Chapman we applied the definition of "purchaser" found in United States v. Scovil, 348 U.S. 218, 221, 75 S.Ct. 244, 99 L.Ed. 271.[5] There it was held that "purchaser" as appearing in § 3672 of the 1939 Internal Revenue Code, the predecessor of § 6323 of the 1954 Code, "usually means one who acquires title for a valuable consideration in the manner of vendor and vendee." Here, as in Chapman, we have a security transaction and not a sale. The assignment did not make the Bank a purchaser within the protection of § 6323. As the Bank was not a purchaser, the taxpayer had a property right which was subjected to a tax lien by the notice.

While not a purchaser, the Bank does qualify as a mortgagee. Section 6323 does not define "mortgagee" and we must assume that the term was used in its ordinary and conventional sense.[6] A mortgage is a security transaction in which the mortgagor does not make an absolute and unequivocal conveyance but retains an equity of redemption. We have pointed out that Kansas recognizes that assignments may be made as collateral security.[7] An assignment such as that involved here "is a common, legitimate commercial transaction."[8] To draw a distinction between a mortgagee and an assignee in a case such as this is to close our eyes to facts of business life.

As the Bank is a mortgagee, the perfected lien standard applies to determine what rights, if any, it has to a priority over the tax lien.[9] A compet-

1. See also Hoare v. United States, 9 Cir., 294 F.2d 823, 825, in which it is said that the meaning of the word "mortgagee" as used in § 6323(a) is a federal question as to which state law is to be considered but is not controlling.

2. First National Bank of Topeka v. United Telephone Association, 187 Kan. 29, 353 P.2d 963, 973.

3. Hall v. Kansas City Terra Cotta Co., 97 Kan. 103, 154 P. 210, 212, L.R.A. 1916D, 361.

4. Everett v. Arkansas City, 118 Kan. 444, 235 P. 856.

5. See United States v. Chapman, 10 Cir., 281 F.2d 862, 868.

6. Cf. United States v. Gilbert Associates, Inc., 345 U.S. 361, 364, 73 S.Ct. 701, 97 L.Ed. 1071.

7. Everett v. Arkansas City, note 4, supra.

8. United States v. Chapman, supra, 281 F.2d p. 870.

9. In United States v. Chapman, supra, pp. 869, 870, we held that the perfected lien

ing lien to be perfected or choate must be definite in the identity of the lienor, the property subject to the lien, and the amount of the lien.[10] Those conditions are met in this case. The assignment was made by the taxpayer to the Bank and notice thereof was accepted by the obligor. The fact that the assignment was open-ended does not make it unperfected or inchoate as to money advanced to and due from the taxpayer at the time of the federal tax lien notice.[11] While the United States contends that the Bank's priority should be limited to the unpaid balance of $1,078.39 on a note dated April 29, 1955, the record shows, and the trial court found, that on the date of the federal tax lien notice, the indebtedness of the taxpayer to the Bank was $3,510. The claim of the Bank has priority over that of the United States in such amount plus interest.

The Surety relies on an assignment contained in the bond application executed by the taxpayer. Thereby the taxpayer assigned to the Surety all money due under the construction contract as security for any liability sustained by the Surety in connection with the bond. The payments by the Surety on account of such liability were made in October and December, 1955, many months after the tax lien notice. As the contractual lien of the Surety was not perfected and choate, because of uncertainty as to amount, at the time of the notice, the claim of the United States must prevail over that of the Surety.[12]

When Foy filed its interpleader, it paid into court $2,522.45. Counsel for the Bank and Surety, without help from the United States, established that Foy owed the taxpayer an additional $3,022.25 plus interest, and judgment was entered against Foy in that amount. Foy does not contest this holding. The Bank and the Surety claim that the United States should bear its proportionate share of the expense involved in the collection of this additional amount. While in private litigation it is inequitable to permit sharing in a fund without contributing to the expense of establishing that fund,[13] the allowance of the expenses requested here would invade the paramount federal tax lien.[14] We are compelled to recognize the supremacy of that lien.

The Bank has a prior claim against the sums due to the taxpayer from Foy to the amount of taxpayer's debt to it on May 18, 1955, plus interest. The United States has a next priority in the amount of the unpaid balance of the tax assessment made on May 8, 1955, plus interest. If these claims do not exhaust the fund, then the claims of the Bank arising subsequent to May 18, 1955, which compete with claims of the United States arising subsequent to May 18, 1955, and supported by tax lien notices shall be given priority on the basis of the principles herein announced.

Reversed and remanded for further proceedings in accordance with this opinion.

---

standard applied in statutory lien cases also applies to contractual liens.

10. United States v. City of New Britain, 347 U.S. 81, 84, 74 S.Ct. 367, 98 L.Ed. 520.

11. In Rev.Rul. 56–41, 1956–1 Cum.Bull. 562, 563, the Internal Revenue Service ruled that: "In the case of an 'open-end mortgage' which covers future advances, it is possible that no future advances may ever be made. Therefore, until such an advance is actually made, there can be no fixed and specific or perfected lien under Federal law as distinguished from a mere contingent lien or 'caveat of a more perfect lien to come.' Consequently,

an intervening recorded Federal tax lien has priority over advances made subsequent to the date of such recording." See Hoare v. United States, note 1, supra, 294 F.2d p. 826, footnote 3.

12. United States v. R. F. Ball Construction Co., 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510; United States v. Chapman, supra, 281 F.2d 869–870.

13. Clarke v. Hot Springs Electric Light & Power Co., 10 Cir., 76 F.2d 918, 924, certiorari denied 296 U.S. 624, 56 S.Ct. 147, 80 L.Ed. 443. See also Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157.

14. Cf. United States v. Chapman, supra, 281 F.2d p. 870.