James L. MARTIN, Plaintiff-Appellee,

v.

COMMERCIAL SECURITIES COMPANY, INC., Defendant-Appellant.

No. 75–2519.

United States Court of Appeals,
Fifth Circuit.

Sept. 27, 1976.

Harry V. Singreen, New Orleans, La., for defendant-appellant.

Herschel C. Adcock, Sheldon D. Beychok, Baton Rouge, La., amici curiae, for Louisiana Bankers Association.

John F. Robbert, New Orleans, La., for plaintiff-appellee.

---

Before WISDOM and MORGAN, Circuit Judges, and LYNNE, District Judge.

LYNNE, District Judge:

This appeal presents an issue of first impression in this circuit, involving substantial consequences both to consumers and to the consumer credit industry. That issue, ultimately stated, is whether an acceleration clause in a consumer note is a term of credit required to be disclosed by the Truth in Lending Act (the Act)[1] and Regulation Z[2] promulgated thereunder.

On August 30, 1973, James L. Martin obtained a consumer loan from Commercial Securities Company, Inc. (Commercial), in the principal amount of $464.67. At the time of this credit transaction Martin executed a combination promissory note and chattel mortgage under which he obligated himself to pay $720.00[3] in twenty-four equal monthly installments. The various terms and provisions of the note and mortgage were set out on both sides of the document executed by Martin. However, the face of the form was also designated to serve as the *Truth in Lending Act Disclosure Statement* for this transaction. A copy of this combination form was delivered to Martin at the time the loan transaction was consummated.

On the reverse side of the document, not a part of the disclosure statement, appeared the following provision in the first paragraph concerning Commercial's right to accelerate payment:

Upon the happening of any of the following defaults, *the note shall be ipso facto matured without any putting in default or presentment;* moreover, the mortgagee may proceed by ordinary process, with or without resort to the security, or by executory process, and cause the property to be seized and sold under legal process with or without appraisement to the highest bidder, payable cash:

(1) failure to pay any installment punctually. . . . [Emphasis added].

\* \* \* \* \* \*

The disclosure statement on the face of Commercial's form contained a provision setting out the charges assessable against Martin in the event of late payment of an installment, but this provision did not mention the remedies provided for on the reverse side of the form.[4] Commercial also delineated within its disclosure statement the method for computing the portion of the finance charge that would be rebated if Martin were to prepay the obligation.[5]

On August 28, 1974, Mr. Martin instituted this action in the United States District Court for the Eastern District of Louisiana, alleging that the disclosure statement delivered to him did not comply with the Truth in Lending Act and Regulation Z thereunder, and seeking statutory damages for inadequate credit disclosures. The complaint set forth two specific alleged violations of the Act and Regulations:

(1) The failure to disclose the correct annual percentage rate by failing to include the cost of credit life insurance and

---

1. Consumer Credit Protection Act §§ 102–45, 15 U.S.C. §§ 1601–65 (1970).

2. Federal Reserve Board Truth in Lending Act Regulations (Regulation Z, 12 C.F.R. §§ 226.-1–.1002 (1975)).

3. This sum included $464.67 as the amount of the loan, $43.20 as the cost of Credit Life and Accident and Health Insurance, and $211.93 as the finance charge, computed on an annual percentage rate of 36%.

4. This provision stated:
   Late charges: If any installment shall not have been paid within 10 days after it becomes due, the Mortgagor agrees to pay a

delinquency charge in a sum equal to 5 percent of the amount of the installment in default or the sum of $5.00, whichever is less.

5. The "Prepayment Provisions" of the disclosure statement provided:
   In the event of prepayment of the note, Mortgagor shall receive a refund credit as specified in R.S. 9:3528, *i. e.,* the amount of such refund shall represent a sum equal to the amount arrived at by using the method of refund commonly referred to as the "Rule of 78" or the "Sum of the Digits" (After first deducting from the finance charge an acquisition cost of $25.00 if one-half or less of the contract term has elapsed).

accident and health insurance as a component of the finance charge as required by Regulation Z, § 226.4(a)(5), 12 C.F.R. § 226.4(a)(5); and

(2) The failure to disclose the amount, or method of computing the amount of any default, delinquency, or similar charges payable in the event of late payment as required by Regulation Z, § 226.8(b)(4), 12 C.F.R. § 226.8(b)(4).

These issues were submitted to the court on cross motions for summary judgment.

On May 9, 1975, the district court granted the motion of plaintiff, Martin, for summary judgment, holding that Commercial's failure to set forth its acceleration provision in the disclosure statement portion of Martin's note-chattel mortgage form constituted a violated of section 128(a)(9) of the Truth in Lending Act,[6] and of section 226.8(b)(4) of Regulation Z.[7] The district court considered the additional alleged violation of Regulation Z, § 226.4(a)(5), but found that the defendant had fully complied with the requirements of that regulation; therefore, the cost of credit insurance was not includable as a part of the finance charge. No appeal has been taken from that ruling. Thus, we are concerned only with the court's determination that the creditor's acceleration provision was a required disclosure under the Act and Regulation Z. We reverse.

The Truth in Lending Act is remedial legislation intended "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." Truth in Lending Act, § 102, 15 U.S.C. § 1601 (1970); see Thomas v. Myers-Dickson Furniture Company, 479 F.2d 740 (5th Cir. 1973). The congressional finding that "[t]he informed use of credit results from an awareness of the cost thereof by consumers" is the principal theme of the Act. Consequently, the Act and the regulations promulgated thereunder require the full disclosure of certain credit terms which Congress and the Federal Reserve Board have deemed essential to the "informed use of credit." Under the Act and the regula-

---

**6.** Section 128 of the Truth in Lending Act provides in pertinent part that:

(a) In connection with each consumer credit sale not under an open end credit plan, the creditor shall disclose each of the following items which is applicable:

.  .  .  .  .

(9) The default, delinquency, or similar charges payable in the event of late payments. 15 U.S.C. § 1638(a)(9) (1970).

**7.** 12 C.F.R. § 226.8(b)(4) (1975). Regulation Z, which was promulgated pursuant to the authority granted the Federal Reserve Board in section 105 of the Act, 15 U.S.C. § 1604 (1970), expands upon the skeletal disclosure requirements of the Truth in Lending Act. Section 226.8 of Regulation Z, 12 C.F.R. § 226.8 (1975), is a "specific" disclosure section for those classes of consumer credit transactions governed by section 128 of the Act, 15 U.S.C. § 1638 (1970). The portions of section 226.8 pertinent to a discussion of the acceleration clause issue are as follows:

(a) General rule. Any creditor when extending credit other than open end credit shall, in accordance with § 226.6 and to the extent applicable, make the disclosures required by this section with respect to any transaction consummated on or after July 1, 1969. . . . All of the disclosures shall be made together on either

(1) The note or other instrument evidencing the obligation on the same side of the page and above or adjacent to the place for the customer's signature; or

(2) One side of a separate statement which identifies the transaction.

(b) Disclosures in sale and nonsale credit. In any transaction subject to this section, the following items, as applicable, shall be disclosed:

.  .  .  .  .

(4) The amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments.

.  .  .  .  .

(7) Identification of the method of computing any unearned portion of the finance charge in the event of prepayment in full of an obligation which includes precomputed finance charges and a statement of the amount or method of computation of any charge that may be deducted from the amount of any rebate of such unearned finance charge that will be credited to an obligation or refunded to the customer. If the credit contract does not provide for any rebate of unearned finance charges upon prepayment in full, this fact shall be disclosed. 12 C.F.R. § 226.8(a), (b)(4) and (7) (1975).

tions the creditor is required to furnish, in most credit transactions, certain specified information to the credit customer. In a separate disclosure statement or on the face of the instrument evidencing the obligation, the creditor must set out, in a straightforward manner and in a meaningful sequence, certain of the terms governing the extension of credit. "It is hoped that the credit customer, armed with a list of the credit terms considered most important by Congress, will be equipped to choose the credit contract that best fits his needs and his ability to repay the loan." *Johnson v. McCrackin-Sturman Ford, Inc.,* 527 F.2d 257, 263 (3d Cir. 1975). Consequently, "disclosure" is a term of art under the Truth in Lending Act, referring to the information to be provided the consumer and the manner in which that information is presented.

In determining whether disclosure of the creditor's right to accelerate the maturity of the debtor's obligation upon default is required by the Truth in Lending Act, we turn to the following pertinent or relevant sources: the Truth in Lending Act itself; Regulation Z; the Federal Reserve Board Interpretations of Regulation Z, 12 C.F.R. §§ 226.101 *et seq.;* and the staff opinions of the Federal Reserve Board. *See Philbeck v. Timmers Chevrolet, Inc.,* 499 F.2d 971, 976 (5th Cir. 1974). While section 128 of the Act and section 226.8(b) of the regulations enumerate the credit terms to be disclosed in consumer credit sales not under an open end credit plan, neither section specifically requires disclosure of the creditor's right to accelerate payment upon default, nor is there any official board interpretation requiring such a disclosure. It is highly illuminating that there is no reference in the Act, the Regulations, or the Official Interpretations of the Federal Reserve Board to acceleration clauses or the right to accelerate payments, even though they are a common feature of installment notes and are traditional creditors' remedies.[8]

Nonetheless, appellee argues that Commercial's failure to include the acceleration clause within the disclosure statement portion of its form violated section 128(a)(9) of the Act, which requires disclosure of "default, delinquency, or similar charges payable *in the event of late payments,*" and section 226.8(b)(4) of Regulation Z, which provides for disclosure of "the amount, or method of computing the amount, of any default, delinquency, or similar charges payable *in the event of late payments.*" The district court agreed with appellee and concluded that the acceleration of a loan upon default was a "charge" within the meaning of sections 128(a)(9) and 226.-8(b)(4), relying upon its earlier opinion in the case of *Meyers v. Clearview Dodge Sales, Inc.,* 384 F.Supp. 722 (E.D.La.1974). *Meyers* presented this same issue, in the context of the credit sale of an automobile, and the conclusion of the court was based upon the reasoning of *Garza v. Chicago Health Clubs, Inc.,* 347 F.Supp. 955 (N.D.Ill. 1972), the seminal case dealing with the issue presented on this appeal. The *Garza* court reasoned that the word "charges" in section 226.8(b)(4) of Regulation Z should be accorded its ordinary meaning absent a specific technical meaning or legislative definition,[9] and then found that:

> Black's Law Dictionary 294 (4th ed. 1951) treats "charges" as a synonym for "obligation" and "claim." The courts have defined the word as meaning a pecuniary burden or expense, *Sunderland v. Day,* 12 Ill.2d 50, 145 N.E.2d 39, 40 (1957), and "'expenses which have been incurred, or disbursements made, in connection with a contract. . . .'" *Weiner v. Swales,* 217 Md. 123, 141 A.2d 749, 750 (1958). Considering these definitions and the purpose of the statute and regulation to inform consumers of credit costs and terms so they can effectively choose between sources of credit (TIL § 102, 15 U.S.C. § 1601), it seems clear that the accelera-

8. *See* note 32 *infra.*

9. 347 F.Supp. at 959, citing, *e. g., Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 7

L.Ed.2d 492 (1962); *United States v. L. R. Foy Construction Co.,* 300 F.2d 207, 210 (10th Cir. 1962).

tion of the balance of the debt should be considered a "charge." [10]

As did the *Garza* court, the district court in *Meyers* concluded with respect to a creditor's right to accelerate payment upon default that "[t]he Truth in Lending Act was intended to require the disclosure of exactly this type of credit information." [11]

The *Garza* and *Meyers* opinions find support for their conclusion that an acceleration clause is a "charge" required to be disclosed under section 128(a)(9) of the Act, and section 226.8(b)(4) of Regulation Z, from the "*Congressional findings and declaration of purpose*" section of the Act.[12] *After initially determining that the creditor's right to accelerate maturity of the obligation is an essential credit term,* these courts [13] have liberally construed the specific disclosure requirements of the Act and Regulation Z to require the disclosure of the acceleration provision. This inclination to fill in holes which the courts perceived in the regulatory matrix by the judicial construction of words which are undefined both in the Act and in the Board's regulations is illustrated by the holding of the district court in *Woods v. Beneficial Finance Co.,* 395 F.Supp. 9 (D.Or.1975), which relied heavily upon *Meyers.* The *Woods* court stated:

I agree with *Meyers* that a right of acceleration is the type of credit informa-

tion that should be disclosed under the spirit of the Act. I do not agree that Beneficial must make the fine semantical distinctions required to equate acceleration with "charge" when no additional total financial cost is imposed. The right of acceleration is a typical clause in consumer credit transactions. Yet the mere right of acceleration of the principal is not specifically mentioned in the Act. Nor has the FRB promulgated any regulations to guide the creditor, despite continuing litigation in this area.

Beneficial need not disclose a right of acceleration as an additional "charge". However, such a right is an obvious concern to a borrower. The Act requires "meaningful disclosure". Henceforth a creditor must disclose and fully explain any right of acceleration in order to comply with the "meaningful disclosure" standard of the Act.[14]

We decline to outreach the question before us. Is the creditor's right to accelerate payments upon default required to be disclosed by a reading of the Act and Regulation Z, fair both to the debtor and the creditor? Congress has set forth in the Truth in Lending Act those credit terms it considers essential to the informed use of credit and has mandated uniformity in terminology and manner of presentment in order to assure a meaningful disclosure of such terms. It is the task of the Board,

---

**10.** *Id.*

**11.** 384 F.Supp. at 727, citing *Garza v. Chicago Health Clubs, Inc., supra; Johnson v. McCrackin-Sturman Ford, Inc.,* 381 F.Supp. 153 (W.D. Pa., July 1, 1974); *Pollock v. Avco Financial Services, Inc.,* 4 CCH Consumer Credit Guide ¶ 98,766 (N.D.Ga., July 1, 1974); *Barksdale v. Peoples Financial Corp.,* 4 CCH Consumer Credit Guide ¶ 98,738 (N.D.Ga., September 5, 1974).

It is interesting at this point to note the fate of the decisions relied upon by the *Meyers* court to support its conclusion. Of the four cases cited above, only *Garza* remains unaffected by subsequent events. The district court's decision in *Johnson v. McCrackin-Sturman Ford, Inc.,* was reversed by the Third Circuit Court of Appeals. *See Johnson v. McCrackin-Sturman Ford, Inc.,* 527 F.2d 257 (3d Cir. 1975). The Special Master's recommendation in *Pollock* reported in the CCH Consumer Credit

Guide was never adopted by the district court since the case was later settled and no opinion issued. *See McDaniel v. Fulton Nat'l Bank,* 395 F.Supp. 422, 424 n.1 (N.D.Ga.1974). Likewise, the Special Master's recommendation in *Barksdale* was not accepted by the district court, but was in fact overruled. *See Barksdale v. Peoples Financial Services Corp.,* 393 F.Supp. 112, 114–15 (N.D.Ga.1975).

**12.** Truth in Lending Act § 102, 15 U.S.C. § 1601 (1970).

**13.** There are numerous other courts adopting this approach. *See, e. g., Kessler v. Associates Financial Services Co.,* 405 F.Supp. 122 (D.Haw., 1975); *Burley v. Bastrop Loan Inc.,* 407 F.Supp. 773, 4 CCH Consumer Credit Guide ¶ 98,478 (W.D.La.1976).

**14.** 395 F.Supp. at 16.

armed with delegated authority, to implement the policy of the Act and not that of the court. The Board has plainly required the consequences of prepayment to be disclosed. It may or may not elect to require the disclosure of those of acceleration by straightforward language.

A somewhat narrower aspect of the issue presented by this appeal has been recently considered by the Third Circuit Court of Appeals in the case of *Johnson v. McCrackin-Sturman Ford, Inc.*[15] In that case the court confronted the issue whether the Truth in Lending Act and Regulation Z "require a creditor to disclose an acceleration clause where state law provides that the creditor must rebate the unearned portion of the finance charge."[16] The court, Judge James Hunter, III, writing, held in part that the creditor's right to acceleration was not a "charge" within the meaning of section 128(a)(9) of the Act and section 226.-8(b)(4) of Regulation Z, and therefore need not be disclosed under those sections.[17] We are in complete agreement with this aspect of the Third Circuit's opinion, and Judge Hunter's discussion of that question is helpful in our consideration of the somewhat broader issue in the case *sub judice.*[18]

The Third Circuit made the following observation concerning the creditor's right of acceleration:

> We dare say there is probably not an installment contract in force today that does not contain a clause granting the creditor the right to require immediate payment of all installments upon the happening of a specified event, usually a default in repayment of the loan. Exercise of that right by the creditor shortens, sometimes dramatically, the time period during which the borrower would normally be able to repay the loan. The purpose of such a provision is obvious. Without the right to accelerate payment, the creditor would be forced to sue each month as each installment payment became due and as the borrower defaulted on the installment, a course of action that is both commercially unreasonable and, in all probability, quite expensive to the borrower since he might be liable for 24 or 30 different sets of court costs.[19]

It may be assumed that acceleration of the maturity of the obligation is never automatic, no matter how mechanical the terms of the acceleration clause might appear.[20] The occurrence of the condition precedent to acceleration merely gives the creditor the right to accelerate the maturity date of the obligation, a right which may or may not be exercised. Obviously the most common condition precedent is the failure to repay the note according to its terms. Had Mr. Martin defaulted under the terms of the note in this case, Commercial would have had a number of options available to it, one of which was to declare the note immediately due and payable and sue for the outstanding balance.

Section 128(a)(9) of the Truth in Lending Act requires a creditor to disclose "the default, delinquency, or similar charges payable *in the event of late payments,*" and section 226.8(b)(4) of Regulation Z requires the disclosure of "the amount, or method of computing the amount, of any default, delinquency, or similar charges payable *in the event of late payments.*" The lower court and the *Garza* court focused on the word "charges" in these sections and concluded

---

**15.** 527 F.2d 257 (3d Cir. 1975). For a complete listing of all district court decisions dealing with this issue prior to October 3, 1975, see Footnote 11 to the Third Circuit's opinion. 527 F.2d at 264, n. 11.

**16.** *Id.* at 260.

**17.** *Id.,* at 274–67.

**18.** We are not in complete agreement with the Third Circuit's decision in *Johnson.* However, the point of departure in our respective analysis of the acceleration clause issue, *i. e.,* reliance upon the Staff Opinion Letter of October 22, 1974, will not be treated until later in this opinion. *See* discussion in text accompanying notes 29–34, *infra.*

**19.** 527 F.2d at 264.

**20.** Here the note provides that "[u]pon the happening of any of the following defaults, the note shall be *ipso facto* matured without any putting in default or presentment."

that the ordinary meaning of that word included a pecuniary burden or obligation. We agree with the Third Circuit, which stated with respect to this conclusion:

This reasoning, however, ignores the fact that the words "default, delinquency, or similar" modify the term "charges." In considering the word "charges" apart from the language that modifies it, the lower court not only used a method of analysis which is inconsistent with well established principles of statutory interpretation[21] but also derived a definition of that term which does not comport with the purpose of section 128(a)(9).

Neither the Truth in Lending Act nor its legislative history defines the phrase "default, delinquency, or similar charges." However, prior to enactment of the Act, the terms "default charges" and "delinquency charges" had well established meanings in the commercial credit field and in other consumer credit legislation,[22] and it is certain that Congress was well aware of these definitions. Since the legislative history of the Act indicates that Congress intended to enact remedies that reflected commercial realities,[23] we presume that Congress meant to ascribe to the terms "default charges" and "delinquency charges" the generally accepted meanings of these terms in the consumer credit industry.[24]

In the commercial credit field and in other consumer credit legislation, the terms "delinquency charges" and "default charges" generally refer to specific pecuniary sums that are assessed against the borrower solely because of his failure to make his payments in a timely manner. They are sums above and beyond the amount ordinarily due in the event of timely payment. The *Consumer Credit Guide,* a widely-used source in the consumer credit field, defines "delinquency charges" as follows:

Delinquency charges . . . are the compensation a creditor receives on a precomputed contract for the debtor's delay in making instalment payments.

\* \* \* \* \* \*

Because a precomputed contract is the only one prepared on the assumption that the debtor will make all payments when due, the creditor is left without any income for a period where payment is delayed. *In lieu of accelerating the maturity of the entire obligation,* the creditor may make an appropriate charge just for the delay on the particular installment.[25]

The Pennsylvania Motor Vehicle Sales Act, a representative consumer credit statute, defines "default charge" as follows:

A default charge may be collected on any installment payment or payments which are not paid on or before the due date of such payments. Such default charge shall not exceed the rate of two

---

**21.** The meaning of a word is known from the words that accompany it, *noscitur a sociis. Jarecki v. G. D. Searle & Co.,* 367 U.S. 303, 81 S.Ct. 1579, 6 L.Ed.2d 859 (1961).

**22.** *See generally* Curran, *Trends in Consumer Credit Legislation* 71–72 (1965) (American Bar Foundation study of consumer credit published two years before the original Senate version of the Truth in Lending Act was introduced).

**23.** *Stavrides v. Mellon Nat'l Bank & Trust Co.,* 353 F.Supp. 1072, 1078–79 (W.D.Pa.), *aff'd* 487 F.2d 953 (3d Cir. 1973); *see e. g.,* S.Rep.No.392, 90th Cong., 1st Sess. 1–2 (1967); *id.* at 23 (statement of Rep. Wallace F. Bennett); Hearings on S. 750 before the Sub-comm. on Production & Stabilization of the Senate Comm. on Banking & Currency, 88th Cong., 1st & 2d Sess., pt. 2, 1303 (1963–1964) (Letter from Paul

R. Dixon, Chairman of the Federal Trade Commission advising that whatever consumer credit legislation was passed had to deal with the methods by which credit was currently extended); 2 U.S.Code Cong. & Admin.News (1980–1981) (definitions of many terms used in the Act are based on the established meaning of those terms in the finance industry).

**24.** *Cf. Corning Glass Works v. Brennan,* 417 U.S. 188, 202, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974).

**25.** 1 CCH Consumer Credit Guide ¶¶ 4230, 4231 (1971) (emphasis added). *See also* Uniform Consumer Credit Code § 2.203, 1 CCH Consumer Credit Guide ¶ 5063 (1975) (similar definition of "delinquency charges").

percent (2%) per month on the amount of the payment or payments in arrears. . . . Such default charges may be collected, when earned, during the term of the contract, or may be accumulated and collected at final maturity, or at the time of final payment under the contract. *Such default charge shall not be collected on any payment in default because of any acceleration provision in the contract.*[26] 527 F.2d at 265–66 (Footnotes renumbered).

Consequently, we find that the phrase "default, delinquency, or similar charges payable in the event of late payments" in section 128(a)(9) of the Act, in the absence of a regulation expanding the characterization of "similar charges", mandates disclosure only of those specific monetary sums imposed upon the debtor because of the late payment of an installment.[27] Commercial has clearly and adequately disclosed these charges under the heading "Late Charges"[28] appearing within the disclosure statement portion of its note.

Foreseeing our inability to accept the *Garza-Meyers* definition of a "charge," the plaintiff further contends that an actual monetary charge is visited upon him in the event of his default since Commercial asserts the right to collect the entire unpaid balance of the note in its acceleration clause. Relying upon an October 22, 1974, Federal Reserve Board Staff Opinion Letter, issued by Frederic Solomon, Director of the Office of Saver and Consumer Affairs,[29] Martin insists that the creditor's failure to provide for a rebate of unearned interest in the event of acceleration results in a section 128(a)(9) charge that must be disclosed.[30]

An installment note is a precomputed contract prepared under the assumption that the debtor will make all payments in a timely manner, and it consists basically of two components: principal and interest. The interest or finance charge is precomputed at a stated rate over the life of the

**26.** § 21(A), 69 P.S. § 621(A) (1965) (emphasis added). *See generally* 1–3 CCH Consumer Credit Guide (1971) (compilation of state consumer credit statutes); Brief for Ford Motor Credit Co. at APP. 1a–4a (citations to all state consumer credit statutes with similar definitions of "delinquency charges" and "default charges").

**27.** *See Mirabal v. General Motors Acceptance Corporation,* 537 F.2d 871, 884, 885 (7th Cir. 1976).

**28.** *See* footnote 4, *supra.*

**29.** Federal Reserve Board Staff Opinion Letter No. 851, 4 CCH Consumer Credit Guide ¶ 31,-173 (Oct. 22, 1974).

This is in response to your letter of June 26, inquiring whether an acceleration clause in an installment contract is a "charge" payable in the event of late payment within the meaning of § 226.8(b)(4) of Regulation Z and therefore must be disclosed with other required items.

For the purpose of Truth-in-Lending disclosures, this staff views an acceleration of payments as essentially a prepayment of the contract obligation. As such, the disclosure provisions of [12 C.F.R.] § 226.8(b)(7) of the Regulation, which require the creditor to identify the method of rebating any unearned portion of the finance charge or to disclose that no rebate would be made, apply. If the creditor rebates under one method for acceleration and another for voluntary prepayment, both methods would need to be identified under § 226.8(b)(7). Failure to disclose the method of rebate or nonrebate would be a violation of the Truth-in-Lending Act.

If, under the acceleration provision, a rebate is made by the creditor in accordance with the disclosure of the rebate provisions of 226.8(b)(7), we believe that there is no *additional* "charge" for late payments made by the customer and therefore no need to disclose under the provisions of § 226.8(b)(4). On the other hand, if upon acceleration of the unpaid remainder of the total of payments, the creditor does not rebate unearned finance charges in accordance with the rebate provisions disclosed in § 226.8(b)(7), any amounts retained beyond those which would have been rebated under the disclosed rebate provisions represent a "charge" which should be disclosed under § 226.8(b)(4).

**30.** Since the issuance of the Solomon letter, *see* note 29 *supra,* a number of courts have imposed liability for violations of § 226.8(b)(4) of Regulation Z, based upon its apparent conclusion that § 226.8(b)(7) requires the creditor to disclose its rebate policy upon acceleration. *See, e. g., McDaniel v. Fulton Nat'l Bank,* 395 F.Supp. 422 (N.D.Ga.1975); *Barrett v. Vernie Jones Ford, Inc.,* 395 F.Supp. 904 (N.D.Ga. 1975). *But see Grant v. Imperial Motors,* Civ.No. 3146 (S.D.Ga., December 4, 1974).

note, and is added to the principal amount in order to arrive at a figure known as the "total of payments."[31] The "total of payments" is then divided into smaller individual payments spread over the term of the loan. In the event the obligation is accelerated, *i. e.,* becomes due before the agreed upon maturity date,[32] a certain portion of the precomputed finance charge would be unearned as of the date of acceleration. Plaintiff maintains that the asserted right to collect unearned interest upon the debtor's default is the charge that must be disclosed. *See Barrett v. Vernie Jones Ford, Inc.,* 395 F.Supp. 904, 909 (N.D.Ga. 1975); *Burley v. Bastrop Loan, Inc.,* 407 F.Supp. 773, 4 CCH Consumer Credit Guide ¶ 98,456 (W.D.La., February 11, 1976).

Affording the substantial weight to the Solomon letter that *Philbeck v. Timmers Chevrolet, Inc.,*[33] mandates, we nevertheless can not accept the staff's interpretation of the requirements of sections 226.8(b)(4) and 226.8(b)(7). With deference, we find its one-sentence conclusion that an acceleration of payments is essentially a prepayment of the contract obligation to be an analytical construction of regulatory intent which has not been expressed in language that "all who run may read."[34] In the installment credit context prepayment and acceleration appear to be conceptually antithetical. The former is the unilateral act of the debtor; the latter the unilateral act of the creditor in the typical installment contract.

In summary, while we recognize that one who applies for installment credit may be as concerned about the lender's rebate policy with respect to unearned finance charges in the event of acceleration as he is with such policy upon prepayment, we leave it to the Board to make explicit what Mr. Solomon finds implicit in a regulation which has provoked so much disagreement in conscientious trial courts.

We hold that in the absence of a regulation requiring it, failure to disclose an acceleration clause and the lender's rebate policy with respect thereto in an installment credit transaction does not give rise to a claim for statutory damages.

Accordingly, we reverse and remand for proceedings not inconsistent with this opinion.

---

**31.** *See* Regulation Z, § 226.8(b)(3); 12 C.F.R. § 226.8(b)(3) (1975).

**32.** ACCELERATION . . . . The word is also used in reference to contracts for payment of money in what is usually called an "acceleration clause" by which the time for payment of the debt is hastened or advanced because of breach of some condition. . . . [Black's Law Dictionary 26 (4th ed. 1957)].

**33.** 499 F.2d 971 (5th Cir. 1974). *See also Mourning v. Family Publication Serv., Inc.,* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973); *Bone v. Hibernia Bank,* 493 F.2d 135 (9th Cir. 1974).

**34.** *Contra Johnson v. McCrackin-Sturman Ford, Inc.,* 527 F.2d 257, 267 (3d Cir. 1975).