**Donna M. RICHENBERGER, Appellant,**

v.

**CHRYSLER CREDIT CORPORATION, Appellee.**

Supreme Court of Tennessee.

March 14, 1977.

Perry R. Happell, Nashville, for appellant.

John C. Tune, Butler, Tune & Entrekin, Nashville, for appellee.

## OPINION

FONES, Justice.

Plaintiff, Richenberger, brought suit for damages against Chrysler Credit Corporation for an alleged violation of the Truth in Lending Act predicated upon failure to include the acceleration clause in the DISCLOSURE STATEMENT, although it was included in the contract.

The learned Chancellor held that the act and the regulations did not require that the acceleration clause appear on the same side of the page and above the place for the customer's signature, i.e. the DISCLOSURE STATEMENT.

On July 27, 1974, plaintiff entered into a retail installment sales contract with Central Dodge of Nashville for the purchase of an automobile. The contract was then assigned to defendant by Central Dodge. The entire contract was contained on two sides of a single sheet of paper. The plaintiff's signature appears only on the front side. Above her signature appears the following contractual provision:

14. Prepayment Rebate: Buyer may prepay his obligations under this contract in full at any time prior to maturity and receive a refund credit computed in accordance with the Rule of 78's. Said rebate will be computed after first deducting from the finance charge an acquisition charge in the amount of $25.00. No rebate will be paid in an amount less than $1.00.

On the *reverse* side of said contract appears the acceleration clause:

2. If Buyer defaults in any payment, or fails to comply with any of the terms or conditions of the contract, or fails to procure or maintain the vehicle insurance required hereunder, or a proceeding in bankruptcy, receivership or insolvency shall be instituted by or against Buyer or his property, or if Seller deems the property in danger of misuse or confiscation, Seller shall have the right, at its election, to declare the unpaid portion of the Total of Payments under the contract to be immediately due and payable, together with any other amount for which Buyer shall have become obligated hereunder. In any such event, Seller, its agents or representatives, may enter the premises where the property may be and take immediate possession of the property including any equipment or accessories, and Seller may take possession of any other items in the property at the time of repossession, and hold them without liability until demanded by Buyer. Waiver by Seller or any default shall not be deemed a waiver of any other default. .

Plaintiff contends that the acceleration clause was not properly disclosed in accordance with the act and regulations promulgated thereto. The pertinent provision of the Act sets forth:

### 15 U.S.C. § 1638

(a) . . . the creditor shall disclose each of the following items which is applicable . . .,

.    .    .    .    .

(9) The default delinquency or similar charges payable in the event of late payments."

The relevant regulations implementing the above provision of the Act, promulgated by the Federal Reserve Board (FRB) pursuant to delegated authority by congress, provide:

### 12 C.F.R. § 226.8

(a) . . . [A]ll of the disclosures shall be made together on either

(1) The note or other instruments evidencing the obligation *on the same side of the page and above the place for the customer's signature*; or

(2) One side of a separate statement which identifies the transaction.

(b) . . . In any transaction subject to this section, the following items, as applicable shall be disclosed

.    .    .    .    .

(4) The amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments.

.    .    .    .    .

(6) A description of any penalty charge that may be imposed by the creditor or his assignee for prepayment of the principal of the obligation (such as a real estate mortgage) with an explanation of the method of computation of such penalty and the condition under which it may be imposed.

(7) *Identification of the method of computing any unearned portion of the finance charge in the event of prepayment* in full of an obligation which includes precomputed finance charges and a statement of the amount or method of computation of any charge that may be deducted from the amount of any rebate of such unearned finance charge that will be credited to an obligation or refunded to the customer if the credit contract does not provide for any rebate of unearned finance charges upon prepayment in full, this fact shall be disclosed. (Emphasis added)

In essence, defendant maintains that an acceleration provision is not a *charge* computed on *late* payments but is an optional *remedy* upon default. It argues that so long as unearned interest is to be rebated in accordance with the contractual provision of clause 14, *supra,* which has been stipulated,[1] the acceleration clause does not amount to a charge that needs to be disclosed under the Act or regulations. In short defendant says that the acceleration clause is no more than a prepayment provision, the rebate provisions of the latter already properly disclosed in the contract. This contention conforms with an opinion given by the FRB. In a letter opinion, the staff of the FRB found an acceleration clause to be essentially a provision for prepayment of the contract, which need not be disclosed so long as the rebate of any unearned interest was disclosed in accordance with 12 C.F.R. 226.8(b)(6) and (7) set forth *supra.*[2]

Plaintiff on the other hand contends that the acceleration clause alone constitutes such a financial burden on the consumer as to amount to a delinquency or default charge. He relies on a federal district court decision, *Garza v. Chicago Health Clubs, Inc.,* 347 F.Supp. 955 (N.D.Ill.1972). The Court in *Garza* found acceleration clauses to be the "type of pecuniary burden or expense" contemplated by Congress to be a "charge" and consequently had to be properly disclosed. 347 F.Supp. at 959.

*Garza* antedates FRB *Opinion, 851,* and that Court did not discuss the theory that acceleration clauses were not charges but merely prepayment provisions. However, *Johnson v. McCrackin-Sturman Ford, Inc.,*

---

1. The stipulation reads as follows:

"In the event of acceleration by Appellee of Appellant's debt pursuant to Paragraph 2, page 2, of the Retail Installment Contract, then and in that event, Paragraph 14 (Prepayment Rebate) on page 1 is applicable and is the method which is or would be used to compute the refund credit, if any."

2. This is in response to your letter of June 26, inquiring whether an acceleration clause in an installment contract is a "charge" payable in the event of late payment within the meaning of § 226.8(b)(4) [Par. 3566] of Regulation Z and therefore must be disclosed with other required items.

For the purposes of Truth in Lending disclosures, this staff views an acceleration of payments as essentially a prepayment of the contract obligation. As such, the disclosure provision of § 226.8(b)(7) [Par. 3566] of the Regulation, which require the creditor to identify the method of rebating any unearned portion of the finance charge or to disclose that no rebate would be made, apply. If the creditor rebates under one method for acceleration and another for voluntary prepayment, both methods would need to be identified under § 226.8(b)(7). Failure to disclose the method of rebate or nonrebate would be a violation of the Truth in Lending Act.

If, under the acceleration provision, a rebate is made by the creditor in accordance with the disclosure of the rebate provisions of § 226.8(b)(7), we believe that there is no *additional* "charge" for late payments made by the customer and therefore no need to disclose under the provisions of § 226.8(b)(4). On the other hand, if upon acceleration of the unpaid remainder of the total of payments, the creditor does not rebate unearned finance charges in accordance with the rebate provisions disclosed in § 226.8(b)(7), any amounts retained beyond those which would have been rebated under the disclosed rebate provisions represent a "charge" which should be disclosed under § 226.8(b)(4). (Emphasis supplied.) FRB letter 851 by Fredrick Soloman (Oct. 22, 1974).

527 F.2d 257 (3rd Cir. 1975); *Martin v. Commercial Securities Co., Inc.,* 539 F.2d 521 (5th Cir. 1976); and *St. Germain v. Bank of Hawaii,* 413 F.Supp. 587 (D.Hawaii, 1976), decided since *Opinion, 851* have focused on the acceleration-prepayment dichotomy and have either avoided or repudiated the idea that acceleration clauses, alone, are "charges" that need to be disclosed.

In *Johnson v. McCrackin-Sturman Ford, Inc., supra,* the Court concurred with the Soloman letter stating:

"Because of the broad powers granted to it under the Truth in Lending Act, the Federal Reserve Boards Interpretation of its own regulations are entitled to great weight. (citations omitted) We are of the opinion that the Board Staff's interpretation of section 226(8)(b)(4) is a reasonable one and agree that when a creditor is required to rebate the unearned portion of the finance charge, his right of acceleration is not a default delinquency or similar charge." 527 F.2d at 267–268.

However, in *Martin v. Commercial Securities Co., Inc., supra,* there was vigorous disagreement with the letter opinion:

"Affording the substantial weight to the Solomon letter that *Philbeck v. Timmers Chevrolet, Inc.* [499 F.2d 971 (5th Cir. 1974)] mandates, we nevertheless cannot accept the staff's interpretation of the requirements of sections 226.8(b)(4) and 226.8(b)(7). With deference, we find its one-sentence conclusion that an acceleration of payments is essentially a prepayment of the contract obligation to be an analytical construction of regulatory intent which has not been expressed in language that 'all who run may read.' In

the installment credit context prepayment and acceleration appear to be conceptually antithetical. The former is the unilateral act of the debtor; the latter the unilateral act of the creditor in the typical installment contract." 539 F.2d at 529.

The Court, however, did not hold that that acceleration clauses had to be disclosed. Instead it found the decision to be solely within the jurisdiction of the FRB.

"'It is the task of the Board, armed with delegated authority, to implement the policy of the act and not that of the Court. The Board has plainly required the consequences of prepayment to be disclosed. It may or may not elect to require the disclosure of acceleration by straightforward language." 539 F.2d at 525–526.

The letter opinion was also dissented to in an interesting analysis by the Federal District Court of Hawaii. *St. Germain v. Bank of Hawaii, supra.* That court found that:

". . . the FRB's one-sentence conclusion in letter 851, viz., that acceleration is essentially a prepayment of the obligation under § 226.8(b)(7), to be clearly erroneous in view of the express provisions of § 226.6(g) and its accompanying footnote." 413 F.Supp. at 604.

█ The theme of § 226.6(g) and its footnote is that subsequent occurrences, including the default of the buyer and necessary actions taken thereto by the seller do not automatically violate the act if not disclosed.[3] The Hawaii court thus reasons:

". . . [T]hat optional acceleration upon default by the creditor constitutes a 'subsequent occurrence' under § 226.6(g)

3.          12 C.F.R. § 226.6

(g) *Effect of subsequent occurrence.* If information disclosed in accordance with this part is subsequently rendered inaccurate as the result of any act, occurrence, or agreement subsequent to the delivery of the required disclosures, the inaccuracy resulting therefrom does not constitute a violation of this part.[6]
[6] Such acts, occurrences, or agreements include the *failure of the customer to perform his*

*obligations under the contract* and such actions by the creditor as may be proper to protect his interests in such circumstances. Such failure may result in the liability of the customer to pay delinquency charges, collection costs, or expenses of the creditor for perfection or acquisition of any security interest or amounts advanced by the creditor on behalf of the customer in connection with insurance, repairs to or preservation of collateral. (Emphasis added.)

of Regulation Z. Disclosure of such is therefore not mandated by Regulation Z. . . ." 413 F.Supp. at 604.

Thus, the three (3) foregoing cases all reach the same result, that acceleration clauses are not required to be disclosed, for three (3) different reasons. In *Johnson*, the Third Circuit agreeing with the FRB found acceleration provisions analogous to prepayment provisions. If the rebate of unearned finance interest provisions were either properly disclosed or subject to state statutory provisions insuring reasonable rebate, there was no necessity for disclosure of the acceleration provision because it alone was not a penalty or charge. The Fifth Circuit in *Martin*, however, finds acceleration clauses not to be essentially a prepayment provision, but leaves it to the FRB to decide whether or not there need be disclosure of its terms. The third rationale of *Bank of Hawaii* is that an acceleration is merely a subsequent occurrence which does not need to be disclosed because it is essentially the creditor's remedy occurring on buyers default.

■ We recognize the logic of the observation in *Martin*, that prepayment provisions and acceleration provisions are "conceptually antithetical." However, in our opinion the controlling consideration is the correct interpretation of the language of § 226.8(b)(4) considered in the light of the nature and usage of the right of acceleration. We think the reasoning of Justice Hunter in *Johnson* is sound and we adopt it, as did the learned Chancellor, as dispositive of this case, and quote the essence of the opinion: [4]

"We dare say there is probably not an installment contract in force today that does not contain a clause granting the creditor the right to require immediate payment of all installments upon the happening of a specified event, usually a default in repayment of the loan. Exercise of that right by the creditor shortens, sometimes dramatically, the time period

during which the borrower would normally be able to repay the loan. The purpose of such a provision is obvious. Without the right to accelerate payment, the creditor would be forced to sue each month as each installment payment became due and as the borrower defaulted on the installment, a course of action that is both commercially unreasonable and, in all probability, quite expensive to the borrower since he might be liable for 24 or 30 different sets of court costs. Except that a specified event in the condition precedent to its exercise, a creditor's right of acceleration is, in essence, akin to the borrower's right of prepayment.

Absent a provision to the contrary, a creditor receives a windfall when he accelerates payment of a contractual obligation because the accelerated debt obligation includes an unearned finance charge. This results from the fact that the finance charge on the stated debt was computed on the basis of the full credit period until maturity, which period has now been shortened. To remedy this inequitable result, the laws of many states, and some contracts, require the creditor to rebate to the borrower the unearned portion of the finance charge or to credit his obligation for this amount. Under such a requirement, all the borrower need pay upon acceleration is the unpaid portion of the principal obligation. This is the situation in the case *sub judice*. If McCrackin-Sturman had exercised its right to accelerate payment, it would have been required under Pennsylvania law to rebate immediately to plaintiffs the entire unearned portion of the finance charge. Plaintiffs would have been obligated to pay only the unpaid principal.

We are of the opinion that McCrackin-Sturman's right to accelerate payment of the unpaid principal does not come within the meaning of the phrase 'default, delinquency, or similar charges' in section 128(a)(9) of the Truth in Lending Act.

4. The parties, in this case, having stipulated that in the event of acceleration, unearned interest would be rebated, the stipulation produc-

ed the same effect as the Pennsylvania statute referred to in *Johnson*.

The lower court and the *Garza* court focused on the word 'charges' in the phrase 'default, delinquency, or similar charges.' Noting that 'charges' was nowhere defined in the Act or in the regulations, the district court relied on what it considered to be the 'usual' meaning of that term, an obligation. This reasoning, however, ignores the fact that the words 'default, delinquency, or similar' modify the term 'charges.' In considering the word 'charges' apart from the language that modifies it, the lower court not only used a method of analysis which is inconsistent with well established principles of statutory interpretation but also derived a definition of that term which does not comport with the purpose of section 128(a)(9).

Neither the Truth in Lending Act nor its legislative history define the phrase 'default, delinquency, or similar charges.' However, prior to enactment of the Act, the terms 'default charges' and 'delinquency charges' had well established meanings in the commercial credit field and in other consumer credit legislation, and it is certain that Congress was well aware of these definitions. Since the legislative history of the Act indicates that Congress intended to enact remedies that reflected commercial realities, we presume that Congress meant to ascribe to the terms 'default charges' and 'delinquency charges' the generally accepted meanings of these terms in the consumer credit industry.

In the commercial credit field and in other consumer credit legislation, the terms 'delinquency charges' and 'default charges' generally refer to specific pecuniary sums that are assessed against the borrower solely because of his failure to make his payments in a timely manner. They are sums above and beyond the amount ordinarily due in the event of timely payment. The *Consumer Credit Guide,* a widely-used source in the consumer credit field, defines 'delinquency charges' as follows:

> Delinquency charges . . . are the compensation a creditor receives on

a precomputed contract for the debtor's delay in making instalment payments.

\* \* \* \* \* \*

Because a precomputed contract is the only one prepared on the assumption that the debtor will make all payments when due, the creditor is left without any income for a period where payment is delayed. In *lieu of accelerating the maturity of the entire obligation,* the creditor may make an appropriate charge just for the delay on the particular instalment.

. . . . .

Thus, we conclude that the phrase 'default, delinquency and similar charges' in section 128(a)(9) of the Truth in Lending Act mandates disclosure only of specific monetary sums, in addition to the amounts already due under the loan, that are imposed because of late payment of an installment or installments. A right of acceleration under which the creditor must rebate the unearned portion of the finance charge is not encompassed within the disclosures required by section 128(a)(9). When a creditor is required to rebate the unearned portion of the finance charge upon acceleration, the result is a shortening of the time for repayment of the principal, not the assessment of an additional penalty charge. *Morris v. First Nat'l Bank,* 4 CCH Consumer Credit Guide ¶ 98,568 (N.D.Ga. July 1, 1975). The borrower incurs no cost other than that disclosed on the face of his credit contract. The creditor is merely given the right to pursue his remedies against the defaulting borrower without awaiting the expiration of the term of the contract. *McDaniel v. Fulton Nat'l Bank,* 4 CCH Consumer Credit Guide, ¶ 96,683 (N.D.Ga. Sept. 19, 1974)." 527 F.2d at 264, 265, 266.

The judgment of the Chancery Court of Davidson County is affirmed. Costs are adjudged against plaintiff, Richenberger.

COOPER, C. J., and BROCK and HARBISON, JJ., concur.

HENRY, J., not participating.