571 F.2d 948
 Robert P. McDANIEL, Plaintiff-Appellee-Cross Appellant,
v.
The FULTON NATIONAL BANK OF ATLANTA,
Defendant-Appellant-Cross Appellee.
Jan T. BARKSDALE, Plaintiff-Appellee,
v.
PEOPLES FINANCIAL CORP. OF ALPHARETTA, Defendant-Appellant.
James R. BARRETT et al., Plaintiffs-Appellees,
v.
VERNIE JONES FORD, INC., et al., Defendants-Appellants.
 Nos. 75-2410, 75-2514 and 75-2515.
 United States Court of Appeals,
Fifth Circuit.
 April 24, 1978.
 
 Marion H. Allen, III, Atlanta, Ga., for defendant-appellant-cross appellee.
 Richard R. Cheatham, Atlanta, Ga., for defendant-appellant-cross appellee, defendant-appellant in No. 75-2514 and defendants-appellants in No. 75-2515.
 Sewell K. Loggins, Douglas N. Campbell, Atlanta, Ga., for Beneficial Finance Co., amicus curiae, in all cases.
 Ernest L. Sarason, Jr., Willard P. Ogburn, Boston, Mass., for National Consumer Law Center, Inc., amicus curiae, in all cases.
 E. Lundy Baety, Atlanta, Ga., for plaintiff-appellee-cross appellant.
 Albert C. Ruehmann, III, Atlanta, Ga., for defendant-appellant in No. 75-2514 and defendants-appellants in No. 75-2515.
 Graydon W. Florence, Jr., Atlanta, Ga., for plaintiff-appellee.
 Mary Joyce Johnson, N. David Buffington, Atlanta, Ga., for plaintiffs-appellees.
 Appeals from the United States District Court for the Northern District of Georgia.
 Before BROWN, Chief Judge, and TUTTLE, THORNBERRY, COLEMAN, AINSWORTH, GODBOLD, MORGAN, CLARK, RONEY, GEE, TJOFLAT and FAY, Circuit Judges.*
 GEE, Circuit Judge:
 
 
 1
 We here reconsider en banc the rule of Martin v. Commercial Securities Co., 539 F.2d 521 (5th Cir. 1976), that neither an acceleration clause nor the lender's rebate policy with respect to acceleration clauses must be disclosed under the Truth-in-Lending Act (the Act).[1] Our panel held itself bound by Martin and so holding, disposed of these appeals on its authority.[2] We reverse.
 
 
 2
 We agree with Martin that a mere right in the lender to accelerate payments upon the event of a late payment is not a charge and hence need not be disclosed under the Act. But we are unable to free ourselves of the conviction that where the acceleration has effect to require payment of interest not earned as of the accelerated due date, an additional charge has been imposed a "rental" of the principal charged for a period during which the borrower did not retain it and hence, as in the case of prepayment, did not owe.
 
 
 3
 These cases, then, present the question whether the Act as implemented by Regulation Z[3] requires a creditor to disclose as a default charge the fact that the loan agreement gives him the contract right to accelerate and demand payment of the entire indebtedness, principal and interest, when a default occurs before the end of the period over which the interest has been computed. The statute, 15 U.S.C. § 1638(a)(9), provides that:
 
 
 4
 (T)he creditor shall disclose each of the following items which is applicable:
 
 
 5
 (9) The default, delinquency, or similar charges payable in the event of late payments.
 
 
 6
 Regulation Z, section 226.8(b)(4) requires that a lender specifically disclose and label the "amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments." Thus, the question is whether the payment of the accelerated indebtedness (which, of course, usually includes interest for the entire term of the original loan, only a part of which has expired at the time of the default) constitutes "default, delinquency, or similar charges payable in the event of late payments."
 
 
 7
 An example may help clarify the situation: A debtor borrows $100 for $20 interest. This interest is added to the face amount of the note, repayable in twelve monthly installments of $10 each. After six months and $60 in payments, the borrower defaults. The agreement permits, on default, the creditor to declare the remaining $60 due. Thus, he can sue for, and recover, the balance of $60, although the borrower will have had the use of the funds only for the first six months of the contract. In this event, instead of paying $20 to use $100 for a year, the debtor will have paid $10 to use $100 for six months and another $10 because he defaulted (the unearned portion of the finance charge).[4] We find ourselves unable to classify this extra $10 payment consequent upon acceleration as anything other than a "default, delinquency or similar charges . . . payable in the event of late payments," which is required to be disclosed. See Johnson v. McCrackin-Sturman Ford, Inc., 527 F.2d 257 (3d Cir. 1975).
 
 
 8
 We are sustained in the above conclusions by a recent Federal Reserve Board Official Staff Interpretation.[5] Such pronouncements, it is said, are entitled to deference from us, and we agree.[6] The interpretation states, in relevant part:You ask whether a creditor's right of acceleration upon default by the obligor must be disclosed as a default, delinquence, or late payment charge within the context of § 226.8(b)(4). It is staff's opinion that the phrase "default, delinquence, or similar charges in the event of late payments," (sic ) found in § 128(a)(9) and § 129(a)(7) of the Truth in Lending Act and § 226.8(b)(4) of Regulation Z, refers to specific sums assessed against a borrower solely because of failure to make payments when due. It is staff's opinion that the mere right to acceleration contained in a contractual provision which sets out the creditor's right to accelerate the entire obligation upon a certain event (generally the obligor's failure to make a payment when due) is not a charge payable in the event of late payment. Therefore, it need not be disclosed under § 226.8(b)(4).
 
 
 9
 You refer to a prior Public Information Letter, No. 851, which discusses the right of acceleration. Staff believes that letter addresses a different issue than the one posed in your letter. Staff understands that letter to say that early payment of the balance of a precomputed finance charge obligation by a customer upon acceleration by the creditor is essentially the same as a prepayment of the obligation. Therefore, if the creditor does not rebate unearned finance charges in accordance with the rebate provisions disclosed under § 226.8(b)(7) when the customer pays the balance of the obligation upon acceleration, any amounts retained beyond those which would have been rebated under the disclosed rebate provisions do represent the type of charge that must be disclosed under § 226.8(b)(4).[7]
 
 
 10
 The interpretation has been criticized for analogizing acceleration to prepayment so as to require disclosure only when the rebate provisions in the former event are less favorable to the borrower than in the latter.[8] But the staff's construction is a practical one in a debatable area, is not plainly wrong, and should if followed by courts produce uniformity in a matter where uniformity is very desirable. We adopt it as the rule of decision in these cases.
 
 
 11
 Except as to these litigants, however, we make our ruling prospective only from the date of this decision, plus 90 days, so that it will first apply to obligations incurred or renewed in such a manner as to require disclosure after that date. We vacate the judgments of the panel in these cases and remand them to the panel for disposition by it in a manner consistent herewith.
 
 
 12
 VACATED AND REMANDED.
 
 
 
 *
 Circuit Judges Goldberg and Hill did not participate in the consideration or decision of this opinion
 Circuit Judges Rubin and Vance were not members of the court when this opinion was considered En Banc, and, therefore, did not participate in this decision.
 
 
 [1]
 15 U.S.C. §§ 1601-1666j
 
 
 [2]
 As that opinion notes, "(t)he established policy of this Court is to recognize the binding effect of a prior decision by another panel of the Court subject only to a reversal of the Court sitting en banc." McDaniel v. Fulton Nat'l Bank, etc., 543 F.2d 568, 570 (5th Cir. 1976)
 
 
 [3]
 12 C.F.R. §§ 226.1-.15 (1977)
 
 
 [4]
 For simplicity, this example supposes that the debtor has the use of the full principal throughout the loan period. In fact, of course, he does not, as he repays a portion of it each month. It is for this reason that prepayment rebates are often made according to the "Rule of 78's" or "actuarial method," in order to reflect the fact that the borrower has the use of the largest amount of capital at the early stages of the loan
 
 
 [5]
 F.R.B. Official Staff Interpretation No. FC-0054, 5 CCH Cons.Cred.Guide P 31,522 (March 21, 1977)
 
 
 [6]
 Comment, Acceleration Clause Disclosure under the Truth in Lending Act, 77 Col.L.Rev. 649, 665 (1977)
 
 
 [7]
 See n. 6, supra (original emphasis)
 
 
 [8]
 Comment, supra, n. 6 at 666-68