REGAN, District Judge.
At issue is whether the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq. (1976), and Federal Reserve Board Regulation Z, 12 C.F.R. §§ 226.1 — .15 (1977), mandate disclosure of an acceleration clause in a retail installment contract. The district court, the Honorable Earl R. Larson, ruled this question in the affirmative. We reverse.[1]
The material facts are not in dispute. Plaintiff contracted with Superior Ford for the purchase of a new automobile, the purchase being financed with Ford Motor Credit Company. The contract form contains on the front a disclosure statement, including one concerning delinquency charges on installments in default and one pertaining to rebate of the unearned portion of the finance charge in the event the buyer prepays in full his obligations under the contract prior to the maturity of the final installment thereunder.
On the reverse side of the contract is a provision which in certain events, including default in any payment, authorizes but does not require the creditor to declare all amounts due or to become due “immediately due and payable.” This acceleration clause was not disclosed on the face of the contract. Plaintiff’s recovery of $1,000 damages and attorney’s fees is based solely on this omission. There is no contention that at the time this suit was brought plaintiff was in default or that defendants had utilized the acceleration clause.
The Truth in Lending Act is unquestionably remedial legislation, the expressed purpose of which is “to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.” 15 U.S.C. § 1601. The Act sets forth certain specific items and credit terms which the creditor must disclose to the credit customer, together with the time and method of such disclosure. Id. § 1638(a), (b). The Board of Governors of the Federal Reserve System is directed to prescribe regulations to carry out and implement the purposes of the Act, Id. § 1604, and in carrying out this directive the Board has promulgated Regulation Z.
Acceleration clauses (the right to accelerate and require immediate payment of all installments upon default or other specified events) have traditionally been a common feature of installment contracts. Begay v. Ziems Motor Co., 550 F.2d 1244, 1248 (10th Cir. 1977). It is significant, therefore, that neither the Act nor Regulation Z in terms requires disclosure of or even refers to an acceleration clause. What is required, in 15 U.S.C. § 1638(a)(9), is only that the creditor disclose “[t]he default, delinquency, or similar charges payable in the event of late payments” (emphasis added). And the implementing Regulation Z, 12 C.F.R. § 226.-8(b)(4), provides that such disclosure shall state “[t]he amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments” (emphasis added). In compliance with these provisions, the contract here in question specifically sets forth the obligation of the buyer to pay a delinquency charge on each installment in default for more than 10 days in the amount of 5% thereof or $5.00, whichever is less, together with expenses incurred by the seller in effecting collection.
The initial question is whether the mere right to accelerate is within the purview of “default, delinquency, or similar charges *458 payable in the event of late payments.” Id.. The phrase “default, delinquency, or similar charges” is not defined in the Act. It would appear that Congress did not deem definition was necessary, in light of the fact that terms such as “default charges” and “delinquency charges” had well established meanings in the commercial credit field and in other consumer credit legislation.
The district court stressed the purpose of the Act “to assure a meaningful disclosure of credit terms.” 15 U.S.C. § 1601. However, neither Congress nor the Board stated or implied by the use of this language that the credit user be informed of all the terms available to or required of him. To the contrary, the Act and Regulation Z list only those specific credit terms which Congress and the Board deemed essential to the informed use of credit.
By the use of the term “meaningful” in the purpose section, Congress had reference to how the specifically required disclosures should be made, not which terms must be disclosed. To that end, in order to assure a “meaningful disclosure,” the operative sections of the Act, as well as Regulation Z, prescribe uniformity in both terminology and manner of presentation of the listed credit terms.
Obviously, in some context every term in a retail installment contract may be of importance to a credit customer. However, there is no provision in the Act which delegates to the courts any authority to enlarge upon the list of disclosure requirements set forth in the Act and the Board regulations simply because in the judgment of a court such additional information may be deemed desirable or even material to effectuate the statutory purposes. That power has been expressly given only to the Board: “The Board shall prescribe regulations to carry out the purposes of [the Act].” Id. § 1604 (emphasis added). The judiciary is limited to the specific disclosure requirements of Regulation Z in the consideration of whether disclosure of an acceleration clause is necessary to carry out the purposes of the Act.
We note that the Federal Reserve Board’s Official Staff Interpretation of the Act and Regulation Z (which, although not binding on the Courts, is entitled to respect) is to the effect that “the mere right to accelerate ... is not a charge payable in the event of late payment,” and “[tjherefore, it need not be disclosed under § 226.8(b)(4).” Federal Reserve Board Official Staff Interpretation No. FC-0054 (March 21, 1977), 42 Fed.Reg. 18,056 (1977) (emphasis added).[2]
“In the commercial credit field and in other consumer credit legislation, the terms ‘delinquency charges ’ and ‘default charges ’ generally refer to specific pecuniary sums that are assessed against the borrower solely because of his failure to make his payments in a timely manner. They are sums above and beyond the amount ordinarily due in the event of timely payment.” Johnson v. McCrackin-Sturman Ford, Inc., 527 F.2d 257, 266 (3d Cir. 1975) (emphasis added).
A late payment default or delinquency charge is one made to compensate the creditor for the loss of the use of his money during the period of the debtor’s delay in paying a particular installment. Such charges are imposed by the creditor as an alternative to acceleration, as a means of enabling the debtor to continue the installment payment of the loan under its original terms.
In our judgment the term “similar charges” has reference to charges comparable to default and delinquency charges, that is, to sums of money, additional to the debt- or’s existing obligation, which are imposed upon him because of the late payment of an installment to compensate the creditor for the delay in payment, certainly so in the absence of a Board regulation expanding the meaning of the term. The right to accelerate is simply an additional contractual remedy which the creditor may, but need not, utilize in the event of default.
*459 We join the Third Circuit, Johnson v. McCrackin-Sturman Ford, Inc., supra, the Fifth Circuit, Martin v. Com’l Securities Co., Inc., 539 F.2d 521 (5th Cir. 1976),[3] the Ninth Circuit, St. Germain v. Bank of Hawaii, 573 F.2d 572 (9th Cir. 1977), and the Tenth Circuit, Begay v. Ziems Motor Co., supra, in holding that absent a regulation requiring it, the mere right to accelerate is not a charge payable in the event of late payment.
Plaintiff urges, however, that even if the mere existence of an acceleration clause need not be disclosed, the fact that such undisclosed clause does not reveal the creditor’s policy with respect to rebate of unearned interest in the event of acceleration of itself gives rise to a claim for damages under the Act. The Tenth Circuit has rejected this approach in its entirety. Begay v. Ziems Motor Co., supra. This was formerly the position of the Fifth Circuit. Martin v. Com’l Securities Co., Inc., supra.
In retreating from Martin, the Fifth Circuit en banc held that where on its face the loan contract purports to give the creditor the right to accelerate and demand payment of the entire indebtedness, including precomputed interest on future installments, the creditor is required to disclose his rebate policy in the event of early payment of the accelerated indebtedness, on the theory that such payment constitutes “default, delinquency, or similar charges payable in the event of late payment.” McDaniel v. Fulton Nat. Bank of Atlanta, No. 75-2410, 571 F.2d 948 (5th Cir. April 24, 1978).
In so holding, McDaniel “adopted” as its rule of decision the Federal Reserve Board’s Staff Interpretation FG-0054, on the premise that the Staff Interpretation “is a practical one in a debatable area.” Id., at 951. The difficulty with McDaniel is that it is inconsistent with the staff’s construction of the very Interpretation relied on by the Court. Staff Interpretation FC-0054 ruled only that any amounts of unearned finance charge retained by the creditor beyond those which would have been rebated under the disclosed rebate provision in the event of prepayment “do represent the type of charge that must be disclosed under § 226.-8(b)(4).” Interpretation No. FC-0054, supra.
We find no language in FC-0054 requiring disclosure “as a default charge the fact that the loan agreement gives [the creditor] the contract right to accelerate and demand payment of the entire indebtedness, principal and interest, when a default occurs before the end of the period over which the interest has been computed,” McDaniel, supra, at 950 (emphasis added), in situations where the creditor’s actual policy is not to exercise this contract right. And in Staff Letter No. 1208 (July 6,1977), written by Jerauld Kluckman, the author of Interpretation FC-0054, the staff has expressly construed that Interpretation to mean no more than that disclosure is required only if the creditor’s actual, although unwritten, policy is to retain unearned interest in the event of early payment upon acceleration.
St. Germain v. Bank of Hawaii, supra, mandates disclosure of whether and how a rebate of unearned interest will be made by equating acceleration with prepayment (the concept advanced in Federal Reserve Board Staff pronouncements),[4] although acknowledging that “the prepayment concept is not without its own problems.” 573 F.2d at 576. One such problem is that if acceleration and prepayment are equivalents, then the creditor’s disclosure respecting rebate upon prepayment would comply with the only express requirement of § 226.8(b)(7) of Regulation Z; “If the credit contract does not provide for any rebate of unearned finance charges upon prepayment in full, this fact shall be disclosed” (emphasis added). Nevertheless, in order to arrive at “a result which is consistent . . . with *460 the overriding purposes of Congress in enacting TILA,” St. Germain reasons that “[t]he prepayment concept leads directly to the conclusion that the effect of the acceleration clause on unearned interest must be ‘meaningfully disclosed in the disclosure statement’ . . . 573 F.2d at 576.
The Third Circuit, in Johnson v. McCrack-in-Sturman Ford, supra, also equates acceleration with prepayment. 527 F.2d at 269 n.28. Its view, however, is that even though the contract on its face does not provide for a rebate of unearned interest, disclosure of a right of acceleration is not required where, under the applicable state law, the creditor is required to rebate unearned finance charges, and the method of rebate upon prepayment is disclosed.
The Ninth Circuit, St. Germain v. Bank of Hawaii, supra, is critical of the Third Circuit’s “addition of the state law element,” contending that it “not only complicates the rule, but also builds into the statute and the regulation a morass of conflicting and uncertain state law.” 573 F.2d at 575. If so, that is all the more reason for the courts to refrain from adding any disclosure requirements additional to those expressly required by the Act and Regulation Z.[5]
Although we agree with Martin v. Com’l Securities Co., Inc., supra, and Begay v. Ziems Motor Co., supra, that the courts may not expand upon the disclosure requirements of the Act and Regulation Z to “fill in holes which the courts perceive in the regulatory matrix,” Martin v. Com’l Securities Co., Inc., supra, at 525, the result we reach not only is consistent with the position of the Federal Reserve Board Staff[6] but also accords with Johnson v. McCrackin-Sturman Ford, supra, inasmuch as we are convinced that Minnesota law precludes the retention of unearned interest in the event of early payment after acceleration, similarly to “voluntary” prepayment.[7]
Defendants’ disclosure statement fully complies with the Act and Regulation Z in describing the method of rebate in the event of prepayment. Regulation Z, fairly read,' requires only the disclosure of the consequences of prepayment, not the effect of the exercise of a right to accelerate. In our judgment, no such additional disclosure requirement is either explicit or implicit in the language of the Regulation. To the extent the absence of such a disclosure requirement may be perceived by the courts as a hole in the regulatory matrix, only the Federal Reserve Board is authorized to fill the hole. It is for the Board itself, not the courts, to assess the potential impact of the exercise of the right of acceleration upon the credit customer and on the basis thereof to determine whether to explicitly expand the existing disclosure requirements. We are unwilling to usurp the prerogatives of the Board.
The judgment in favor of plaintiff is reversed.

. The District Court granted summary judgment to defendant as to ail other claims asserted by plaintiff, including her claim that paragraph 18 of the contract constituted “misleading additional information.” Plaintiff did not appeal from that ruling. Hence, the issue is not before us.

. See also legislative history of the Act as summarized in Comment, Acceleration Clause Disclosure Under the Truth in Lending Act, 77 Colum.L.Rev. 649, 659-662 (1977).

. In McDaniel v. Fulton Nat. Bank of Atlanta, No. 75-2410, 571 F.2d 948 (5th Cir. April 24, 1978), the Fifth Circuit en banc reaffirmed the holding of Martin.

. Federal Reserve Board Staff Opinion Letter No. 851 (October 22, 1974); Official Staff Interpretation No. FC-0054 (March 21, 1977). See also Federal Reserve Board Letter No. 1208.

. We do not, however, agree that the mere fact that district courts of a particular state are in disagreement respecting the construction of the law of that state precludes the utilization of that law.

. It is undisputed that the creditor’s policy in this case is to rebate upon prepayment after acceleration in accordance with the rebate method shown on the disclosure statement.

. The Minnesota statute on rebate of unearned interest in transactions such as here involved, Minn.Stat. § 168.73, expressly provides that upon prepayment of the debt “prior to maturity,” the retail buyer be given a refund credit for anticipation of payment, calculated by the method specified therein. In light of the common law rule in Minnesota that the “right” to collect unearned interest in connection with acceleration is unenforceable as “unconscionable,” In re Mill City Plastics, 129 F.Supp. 86, 90 (D.C.Minn.), affd sub nom. Northtown Theatre Corporation v. Mickelson, 226 F.2d 212 (8th Cir. 1955); see also Op.Minn.Atty.Gen.No. 29-A-18 (1944), the words “prior to maturity” both in the statute and in the disclosure statement could have reference only to the stated maturity of the unpaid installment.