Carolyn PITTMAN and Daniel Pittman, Plaintiffs-Appellees,

v.

MONEY MART, INC., of Mendenhall, Mississippi, a Mississippi Corporation, Defendant-Appellant.

No. 79–3016.

United States Court of Appeals, Fifth Circuit.

Unit A

Feb. 9, 1981.

Young, Scanlon & Sessums, Kenneth G. Stamps, Robert R. Marshall, Jackson, Miss., for defendant-appellant.

Barry Powell, Central Miss. Legal Services, Jackson, Miss., for plaintiffs-appellees.

Before GOLDBERG, GARZA and TATE, Circuit Judges.

TATE, Circuit Judge:

The plaintiff debtors (the Pittmans) sue their creditor (Money Mart) to recover for failure of the creditor's disclosure statement to comply with the requirements of the Truth-in-Lending Act (TILA), 15 U.S.C. §§ 1601–65, as implemented by Regulation Z, 12 C.F.R. §§ 226.1–226.1002. Without reaching other violations urged, the district court granted summary judgment holding that on its face the late-charge (delinquency) provision was ambiguous because of its use of the word "may"; it therefore awarded the Pittmans twice the amount of the finance charges, the statutory penalty for TILA non-disclosure, 15 U.S.C. § 1640(a), as well as attorney's fees. Money Mart appeals. Finding that the delinquency-charge provision complies with the requirements of Regulation Z, we reverse, and we remand for ruling upon the other TILA violations charged.

## The Delinquency-Charge Provision at Issue

The disclosure statement furnished to the Pittmans by Money Mart with regard to this loan agreement included a provision allowing for the discretionary imposition of a default charge in the event of a late payment. The applicable section of the loan agreement read as follows:

> In the event that an installment, or portion thereof, continues unpaid for ten (10) days or more following the date said payment is due, the lender *may* collect a default charge of five percent (5%) of the amount unpaid, not to exceed $5.00. (Italics ours.)

The issue before us[1] is whether this delinquency-charge provision provided adequate disclosure within the requirements of TILA and Regulation Z. The district court held that it did *not* do so, holding (essentially because of its "may") the provision to be "unclear and ambiguous in that the borrower is not informed of the conditions under which a late charge will be imposed."

## The Truth in Lending Act and Regulation Z

In enacting the TILA, the Congress expressed a purpose to strengthen the competition among consumer credit lending institutions by the informed use of credit. 15 U.S.C. § 1601. It stated: "The informed use of credit results from awareness of the cost thereof by consumers. It is the purpose of this [Act] to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." *Id.* See also *Smith v. Chapman*, 614 F.2d 968 (5th Cir. 1980).

With regard to the judicial function in interpreting TILA and Regulation Z, the Supreme Court stated in *Ford Motor Credit Company v. Milhollin*, 444 U.S. 555, 559. 100 S.Ct. 790, 794, 63 L.Ed.2d 22 (1980):

> The Truth in Lending Act has the broad purpose of promoting "the informed use of credit" by assuring "meaningful disclosure of credit terms" to consumers. 15 U.S.C. § 1601. Because of their complexity and variety, however, credit transactions defy exhaustive regulation by a single statute. Congress therefore delegated expansive authority to the Federal Reserve Board to elaborate and expand the legal framework governing commerce in credit. 15 U.S.C. § 1604; *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). The Board executed its responsibility by promulgating Regulation Z, 12 CFR Part 226, which at least partly fills the statutory gaps. Even Regulation Z, however, cannot speak explicitly to every credit disclosure issue. At the threshold, therefore, interpretation of TILA and Regulation Z demands an examination of their express language; absent a clear expression, it becomes necessary to consider the implicit character of the statutory scheme.

TILA requires creditors subject to the act to disclose several items, including perti-

---

1. On its appeal, Money Mart had initially raised additional issues. At oral argument, it waived its contentions that the Pittmans lacked standing and that the Pittman claim was time-barred.

nently here, "[t]he default, delinquency, or similar charges payable in the event of late payment." 15 U.S.C. § 1639(a)(7). In implementation of this statutory requirement, Regulation Z, specifically 12 C.F.R. § 226.-8(b)(4), provides:

> In any transaction subject to this section, the following items, as applicable, shall be disclosed: (4) the amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments.

The statute further exempts from civil or criminal liability for TILA violation "any act done or omitted in good faith in conformity with" Regulation Z or other administrative rule or interpretation. 15 U.S.C. § 1640(f). We ultimately hold that Money Mart's delinquency-charge statement complies with the disclosure requirements of section 226.8(b)(4), Regulation Z, quoted above, and that, therefore, Money Mart cannot be held civilly liable by reason of any claimed inadequacy of disclosure with regard to the delinquency charge imposable for late payment.

*Regulation Z Applied to the Present Delinquency-Charge Disclosure*

The TILA requires disclosure if any delinquency charges are "payable in the event of late payment." 15 U.S.C. § 1639(a)(7). Section 226.8(b)(4) of Regulation Z requires disclosure only of *"the amount"* or the *"method of computing the amount"* of any default charges payable in the event of late payments. Regulation Z thus does not, in terms, provide that the creditor must also specify whether these charges (required by the statute to be disclosed, if "payable") may be optionally demanded by the creditor following a delinquency or instead must be inexorably exacted upon each delinquency, or that the creditor's disclosure must attempt to specify the occasions on which the late-charge would be assessed (e. g., "when payment is more than ten days late," "in the event of repeated delinquencies," etc.) or would be waived.

█ The present delinquency-charge disclosure stated that the creditor "may" collect a default charge of five percent of an unpaid installment, not to exceed five dollars. The disclosure literally states "the amount" or "the method of computing the amount," as alone required by section 226.-8(b)(4) of Regulation Z. The present default exposure thus complies with the TILA requirement provided by Regulation Z's "express language," *Ford Motor Credit Company v. Milhollin, supra.* If this be so, and since the disclosure that delinquency charges are (optionally) "payable" likewise complies with the TIL statute's sole requirement, no actionable TILA violation can be charged. 15 U.S.C. § 1640(f); *Ford Motor Credit Company v. Milhollin, supra,* 444 U.S. at 561, 100 S.Ct. at 797.

The Pittmans nevertheless ably argue that the provision is ambiguous and unclear, in that the debtors do not know when and if a late-payment charge will be exacted of them in the event of delinquency. They suggest that Regulation Z's default-charge requirements are thus unclear in this regard, and that—having regard to the statutory scheme of disclosure for purposes of comparative choice in borrowing—the present delinquency charge disclosure is insufficient: e. g., a finance company invariably exacting a finance charge might disclose only that it "may" do so, securing a competitive advantage over a finance company that frankly discloses that it "will" do so.

The Pittmans would therefore require a late-charge disclosure either to state that the lending institution *"will"* always collect such a charge upon delinquency (surely not in the interest of the consumer whom the statute is designed to protect) or else to attempt to specify the occasions on which it will or will not assess such a charge upon delinquency. The latter requirement, by increasing even further the complexity of the disclosure statements, might itself hinder rather than further the aim of the act to facilitate the comparability of credit terms, if the borrower might become lost in the fine print of additional detailed disclosures of the manner in which each creditor administers its default charge provisions.

The Board may well have given heed to these competing considerations, when—in promulgating section 226.8(b)(4) of Regulation Z with regard to the disclosure required for delinquency charges that were payable—it specified only that "the amount" or the "method of computing the amount" of such charges must be disclosed and *not*, additionally, that the creditor must disclose whether the charges would be optionally or mandatorily assessed or, if optional, the specific criteria for exaction or not. As the Supreme Court noted in *Ford Motor Credit Company v. Milhollin, supra,* the Board is better suited than the courts to engage in the "empirical process" of "striking the appropriate balance" between the "competing considerations of complete disclosure ... and the need to avoid ... 'informational overload.'" 444 U.S. at 567, 100 S.Ct. at 798.

Indeed, the Court's ruling in *Milhollin* may well be considered dispositive of the present issue. There, where the TIL statute was itself silent as to the requirement, the Supreme Court rejected a contention that, despite the Board's administrative interpretations permitting the practice, the creditor's failure to note an acceleration clause on its statement was inadequate disclosure to the consumer. In rejecting the contention, the Court stated, cogently to the present issue, that the Board's regulations as to the sufficiency of matters required to be disclosed on the creditor's statement was congressionally intended to be "authoritative" and should be respected by the courts "so long as the [Board's] lawmaking is not irrational," 444 U.S. at 567, 100 S.Ct. at 798, and is not precluded by clear statutory expression to the contrary. The Court held that the Congress intended the Board, not the courts, to fill interstitial silences of the TIL enactment. *Id.,* 444 U.S. at 567, 100 S.Ct. at 796–8.

Here, TILA's statutory requirement is only that the creditor disclose the delinquency charges *"payable*[2] in the event of late payments." 15 U.S.C. § 1639(a)(7). Regulation Z requires only that the creditor's statement disclose "the amount" *or* "the method of computing the amount" of such charges. 12 C.F.R. § 226.8(b)(4). Under *Milhollin,* the courts should not impose a further court-imposed requirement that the default-charge statement also disclose the specific criteria by which a creditor might exact an optional delinquency charge—a requirement additional to those set forth by the clear expressions of both statute and administrative regulation. We therefore conclude that, here, the creditor's statement disclosed all that was required by the TILA and Regulation Z: it disclosed as required by statute that the transaction included a delinquency charge that could optionally be assessed,[3] and it also disclosed as required by the regulation the amount and the method of computation of such charges.

The plaintiff debtors' reliance is misplaced upon *Pollock v. General Finance Corp.,* 535 F.2d 295 (5th Cir. 1976), aff'd, 552 F.2d 1142 (5th Cir. 1977), cert. den., 434 U.S. 891, 98 S.Ct. 265, 54 L.Ed.2d 176 (1977), as authority to the contrary. There, the creditor's statement disclosed that the security agreement *"may"* cover after-acquired property, while the security agreement itself provided that after-acquired property "will" be subject to it. Unlike the accurate statement in the *present* disclosure statement that the default charge could ("may") be optionally imposed, the disclosure statement by the creditor in *Pollock* that the after-acquired property "may" be subject to the security interest was a substantive misstatement of the actual provision of the transaction that such property "will" be so subject. The disclosure was there in violation of the Regulation Z requirement that, "[i]f after acquired property *will* be subject

---

**2.** Webster's New Collegiate Dictionary (1975), verbo "payable": "that may, can, or must be paid."

**3.** The disclosure statement must accurately reflect whether the delinquency charge provided by the transaction is optional or mandatory, as well as its amount. *Price v. Franklin Investment Company,* 574 F.2d 594, 605 (D.C.Cir. 1978). See also *McDaniel v. Fulton National Bank,* 571 F.2d 948 (5th Cir. 1978) (en banc), clarified 576 F.2d 1156 (5th Cir. 1978).

to the security interest, . . . this fact shall be clearly set forth. . . ." 12 C.F.R. § 226.-8(b)(5) (italics ours).[4]

*Conclusion*

Finding that creditor-appellant's disclosure statement as to delinquency charges adequately met the requirements of the TILA and of Regulation Z, we REVERSE the summary judgment awarding the plaintiff debtors recovery for a Truth-in-Lending-Act violation and, consequently, we VACATE the award to them of attorney's fees based upon such violation. Since the district court did not reach substantial contentions by the plaintiffs-appellees that the defendant's disclosure statement contained other violations of TILA, we REMAND for further proceedings.

REVERSED AND REMANDED.

---

**4.** The plaintiff debtors also rely upon *Franklin v. First Money, Inc.*, 599 F.2d 615 (5th Cir. 1979) (disclosure of default charge inadequate as indefinite, rather than meeting Regulation Z's requirement that "the amount" or "method of computing the amount" be stated) and *Ballew v. Associates Financial Services Company* *of Nebraska*, 450 F.Supp. 253 (D.Neb.1976) (creditor's statement did not disclose that multiple default charges could be assessed for each month an installment became delinquent). Neither decision is apposite to the issue before us.