Joyce STEWART, Plaintiff-Appellant,

v.

FORD MOTOR CREDIT COMPANY, Defendant-Appellee.

No. 81–7509.

United States Court of Appeals, Eleventh Circuit.

Sept. 7, 1982.

Rehearing and Rehearing En Banc Denied Dec. 7, 1982.

Bowen, Derrickson, Goldbert & West, Ralph S. Goldberg, Atlanta, Ga., for plaintiff-appellant.

Levine, D'Alessio, Mullins & Stone, Burgess W. Stone, Atlanta, Ga., for defendant-appellee.

Before MILLER,* Judge, TJOFLAT and CLARK, Circuit Judges.

MILLER, Judge:

This appeal is from the judgment of the district court dismissing plaintiff-appellant's action upon the court's approval of the Magistrate's recommendation that the motion for summary judgment of defendant-appellee Ford Motor Credit Company ("FMCC") be granted and plaintiff-appellant's motion for summary judgment be denied. We affirm.

The action was brought under the Consumer Credit Protection Act (hereinafter "Act"), 15 U.S.C. §§ 1601 *et seq.*, as amended, to recover statutory damages plus court costs and attorney fees. The controversy grew out of appellant's purchase of a used Buick automobile from Neal Pope Ford, Inc., of Atlanta, Georgia, under a Georgia Automobile Retail Installment Contract, dated September 9, 1980. The contract provides, *inter alia,* as follows:

(13) **PREPAYMENT REBATE:** The Buyer may pay this contract in full at any time. If he does so, he will get a credit for the unearned part of the Finance Charge if it is $1.00 or more. This credit will be figured on the sum of the digits method.

(14) **LATE CHARGES:** ... The Creditor may accelerate the remaining payments and repossess the Vehicle as explained below, if there is any default.

(15) **DEFAULT:** If the Buyer fails to make any payment when it is due ... the Creditor may do either or both of the following:

(a) **ACCELERATION OF PAYMENTS:** The Creditor may require the Buyer to pay at once all remaining payments. The Buyer will receive a prepayment rebate as explained above when he pays.[1]

(b) **REPOSSESSION:** ....

Appellant argues, first, that FMCC violated Regulation Z, 12 CFR 226.8(b)(7),[2]

---

* Honorable Jack R. Miller, Judge for the U.S. Court of Customs and Patent Appeals, sitting by designation.

1. Although, as indicated above, a prepayment rebate credit of the unearned part of the finance charge is stated to be figured on the sum of the digits method, FMCC has a policy, in the event of acceleration due to *default*, of rebating by using the pro rata method, which results in a *larger* rebate than would be received under the sum of the digits method. It is clear that under Georgia law the rebate under acceleration of payments due to *default* will be *no less* than that figured by the sum of the digits method. Ga.Code Ann. 96–1004(c) and 96–1005 (effective March 20, 1980).

2. Subsection (7) requires the following:
   Identification of the method of computing any unearned portion of the finance charge in the event of prepayment in full of an obliga-

of the Federal Reserve Board because FMCC's policy on rebate of unearned interest (using the pro rata method) in the event of acceleration of payments due to default under the contract differed from that specified in the event of voluntary prepayment (using the sum of the digits method), quoting from *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 562, 100 S.Ct. 790, 795, 63 L.Ed.2d 22 (1980):

> Section 226.8(b)(7), therefore, squares with the position of the Federal Reserve Board staff that specific disclosure of acceleration rebate policy is only necessary when that policy *varies* from the custom with respect to voluntary prepayment rebates. [Emphasis added.[3]]

However, the meaning of "varies" was clarified by the Court later in Part III of its opinion (*id.* at 565 n.8, 100 S.Ct. at 796 n.8), thus:

> As we read the Staff Opinion and Letters, however, they are fundamentally consistent . . . . The staff's position in each appears to be that separate disclosure of acceleration rebate practices is unnecessary when those practices parallel voluntary prepayment rebate policy. On

the other hand, *where acceleration rebates are less than voluntary prepayment rebates, acceleration policy must be separately explained* under § 226.8(b)(4) and, perhaps as well, under § 226.8(b)(7). [Emphasis added.]

■ The rule requiring separate *disclosure* of acceleration rebate practices *only* when such rebates are *less* (not equal to or greater) than rebates under voluntary prepayment has been adopted by the Fifth Circuit. *McDaniel v. Fulton National Bank of Atlanta*, 5 Cir., 571 F.2d 948, 951 (1978) (en banc).[4] This, of course, is "binding precedent" for the Eleventh Circuit.[5] The court, in *McDaniel*, commented that the Federal Reserve Board Official Staff Interpretation (No. FC–0054) "is a practical one in a debatable area, is not plainly wrong, and should—if followed by the courts—produce uniformity in a matter where uniformity is very desirable." Significantly, the Supreme Court in *Milhollin*, while citing *McDaniel*, manifested no intent to disturb the rule adopted by the Fifth Circuit in *McDaniel*.

■ Appellant's second argument is that FMCC violated Regulation Z, 12 CFR

---

tion which includes precomputed finance charges and a statement of the amount or method of computation of any charge that may be deducted from the amount of any rebate of such unearned finance charge that will be credited to an obligation or refunded to the customer. If the credit contract does not provide for any rebate of unearned finance charges upon prepayment in full, this fact shall be disclosed.
Appellant recognizes that subsection (4) of 12 CFR 226.8(b) requires disclosure of the method of rebate on acceleration for default only when the rebate of unearned interest is *less* than that provided on voluntary prepayment, but emphasizes that the disclosure requirement under subsection (4) is not the same as that under subsection (7). Subsection (4) requires disclosure of "[t]he amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments."

3. The Court (*id.* at 563, 100 S.Ct. at 795) referred to—
the view of the Federal Reserve Board staff that the right of acceleration need *not* be disclosed, and that rebate practice under acceleration must be disclosed only if it differs

from the creditor's rebate policy with respect to voluntary prepayment. [Citing FRB Official Staff Interpretation No. FC–0054, 12 CFR Part 226 Appendix, p. 650 (1981); FRB Public Information Letter No. 851 (1974), (1974–1977 Transfer Binder) CCH Consumer Credit Guide Par. 31,173; FRB Public Information Letter No. 1208 (1977), *id.*, Par. 31,647; FRB Public Information Letter No. 1324 (1978), 5 CCH Consumer Credit Guide Par. 31,827.]

4. In a subsequent rehearing en banc (576 F.2d 1156, 1157 (1978)), the Fifth Circuit stated:
But if the creditor possesses under his contract the right to retain more unearned interest in the event of accelerated payment pursuant to default than in that of voluntary prepayment . . . then the existence of that right in him must be disclosed—and this entirely without regard to whether or how he exercises that right in the event.

5. *Bonner v. City of Prichard, Alabama*, 661 F.2d 1206 (1981). We note that the Supreme Court of Georgia has recently taken the same approach. *Ford Motor Credit Company v. Mells*, 249 Ga. 106, 290 S.E.2d 271 (1982).

226.6(c), of the Federal Reserve Board [6] because FMCC's contract disclosed that the method of rebating unearned interest was the same on acceleration due to default as on voluntary prepayment (*viz.*, the sum of the digits method) when they were not the same, the pro rata method being used on acceleration. Appellant asserts that she was "entitled to know" that if she allowed her contract with FMCC to go into default, she would receive more unearned interest as a rebate than if she voluntarily prepaid the installments owing under the contract. There are two answers to this. First, the only disclosure *required* by the regulation in this case was that concerning rebate on voluntary prepayment, and no misinformation was provided by FMCC *with respect to it.* Any possible "confusion" of appellant would relate to rebate in the event of acceleration upon default which was *not required* to be disclosed. Thus, subsection (c) of the regulation is inapplicable to this case. *Fox v. Heilig-Meyers Co.*, 681 F.2d 212 (4th Cir. 1982); *see Gallois v. Commercial Securities Co.*, 661 F.2d 901 (5th Cir. 1981); *Philbeck v. Timmers Chevrolet, Inc.*, 499 F.2d 971 (5th Cir. 1974). Second, to adopt appellant's approach would tend to encourage defaults by buyers under installment contracts contrary to good business practices—a result that should not be imputed to the Act in the absence of a showing of clear Congressional intent. Such intent is absent here.[7]

In view of the foregoing, the judgment of the district court is AFFIRMED.[8]

CLARK, Circuit Judge, dissenting:

I disagree with the majority's resolution of the difficult issues presented in this case. The courts continue to have difficulty in interpreting various loan or finance contract clauses providing for rebate of unearned interest resulting from (1) voluntary prepayment or from (2) accelerated prepayment caused by default. The majority and I differ in the interpretation of *Ford Motor Credit Company v. Milhollin*, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980).

*Milhollin* holds that when a creditor rebates unearned interest at differing rates for these separate precipitating causes, both methods must be disclosed.

The Federal Reserve Board staff treatment of acceleration disclosure rationally accommodates the conflicting demands for completeness and for simplicity. In determining that acceleration rebate practices need be disclosed *only when they diverge from other prepayment rebate practices*, the Federal Reserve has adopted what may be termed a "bottom-line" approach: that the most important information in a credit purchase is that which explains differing net charges and rates. Cf. S.Rep.No.96–73, *supra*, at 3–4; Federal Reserve Board, Annual Report, *supra*, at 350–352. Although the staff might have decided that acceleration rebates are so analytically distinct from identical voluntary prepayment rebates as to warrant separate disclosure, it was reasonable to conclude, alternatively, that ordinary consumers would be concerned chiefly about differing financial consequences.

*Ford Motor Credit Company v. Milhollin*, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980) (emphasis supplied; footnote omitted).

Here, the creditor's practice and policy was to charge less for involuntary prepayment growing out of default than that specified in the contract. This practice is not

---

**6.** Subsection (c) provides, *inter alia*:

*Additional information.* At the creditor's ... option, additional information or explanations may be supplied with any disclosure required by this part, but none shall be stated ... so as to mislead or confuse the customer ....

**7.** The dissenting opinion speculates that, if appellant prevails, FMCC "would have to change

its procedure and defaults by buyers would no longer be encouraged," but this simply overlooks the requirements of Georgia law, note 1, *supra*, and the competitive market in the credit industry.

**8.** Appellant's argument that FMCC "failed to disclose the credit extender clearly" was rejected below and has not been renewed on appeal.

revealed on the face of the contract. The majority, in holding that a creditor can charge differing rates so long as the defaulting debtor is charged less than the debtor who voluntarily prepays, relies on a portion of note 8 of the *Milhollin* opinion. However, that separate disclosures are required when there are different rebate charges or practices is made abundantly clear in the text of the *Milhollin* opinion:

> But so long as the creditor's rebate practice under acceleration is identical to its policy with respect to voluntary prepayments, *separate* disclosure of the acceleration policy does not seem obligatory under a literal reading of the regulation. Regulation 226.8(b)(7), therefore, squares with the position of the Federal Reserve staff that specific disclosure of acceleration rebate policy is only necessary when that policy varies from the custom with respect to voluntary prepayment rebates.

100 S.Ct. at 795 (emphasis in original).

The majority asserts that the meaning of the word "varies" was clarified by the Court in note 8. "Where acceleration rebates are less than voluntary prepayment rebates, acceleration policy must be separately explained." 100 S.Ct. at 796, n.8. I would submit that that statement is not a clarification of the meaning of "varies." The writer happened to use the phrase "less than" rather than "different from." However, in that same footnote 8, the Supreme Court quoted with approval Public Information Letter No. 851. "If the creditor rebates under one method for acceleration and another for voluntary prepayment, both methods would need to be identified under § 226.8(b)(7)." *Id.* The opinion in *Milhollin* makes perfectly good sense in holding that when there are differing rates, both must be stated.

As to appellant's second argument, Regulation Z, 12 C.F.R. § 226.6(c), states:

> (c) *Additional information.* At the creditor's or lessor's option, additional information or explanations may be supplied with any disclosure required by this part, but none shall be stated, utilized, or placed so as to mislead or confuse the customer or lessee or contradict, obscure, or detract attention from the information required by this part to be disclosed.

The majority holds that the debtor in this case was not entitled to accurate information in the contract for two reasons. "First, the only disclosure *required* by the regulation in this case was that concerning rebate on voluntary prepayment, and no misinformation was provided by FMCC with respect to it." (Majority opinion, p. 393) Two errors occur here. *Milhollin* requires disclosure of both rebate rates as discussed in the first part of this dissent. One of these rates was inaccurately stated. Since both were required and one was wrong, the disclosure requirements have not been met. Further, Regulation Z provides that the creditor may at its option supply additional information; but if it does, that information cannot mislead or confuse the customer or contradict or obscure information which is required. The majority holds that only required disclosures must be accurate. In section (c), two practices are forbidden, the misleading and confusing of customers AND the contradiction or detraction of attention from required information. A nexus with required information is necessary, only for the second part to be triggered. The first is involved here.

Additionally, I disagree with the majority that to adopt appellant's approach would tend to encourage defaults by buyers under installment contracts. Rather, defaults are encouraged by the varying rebate practices of the lender and not by our application of truth-in-lending principles. In fact if appellant's approach is adopted, Ford Motor Credit Company would have to change its procedure and defaults by buyers would no longer be encouraged.

For the above reasons, I would reverse the judgment of the district court, and therefore I dissent.[1]

---

1. The opinion, as revised since the dissent was first drafted, at page 5 suggests that the Supreme Court did not disturb the rule in *McDaniel v. Fulton National Bank*, 571 F.2d 948 (5th Cir. 1978). While this is true, the issue involved there is not what this case is about.

The Supreme Court in *Milhollin, supra*, said the following in note 6, 444 U.S. at 559, 100 S.Ct. at 794:

> The Court of Appeals for the Fifth Circuit has also adopted the position that separate disclosure is not required when the creditor is obliged to treat acceleration and voluntary prepayment alike for rebate purposes; that court has emphasized that the critical factor is the creditor's legal obligation to rebate, rather than its unbidden rebate policy. *McDaniel v. Fulton Nat. Bank*, 571 F.2d 948 (en banc), clarified, 576 F.2d 1156 (1978) (en banc).

This note is from Part II of the Supreme Court opinion. In this part, that Court reversed the Ninth Circuit and held that "so long as the creditor's rebate practice under acceleration is identical to its policy with respect to voluntary prepayments, *separate* disclosure of the acceleration policy does not seem obligatory under a literal reading of the regulation." 444 U.S. at 562, 100 S.Ct. at 795. Thus, everyone is in agreement that when the rebate rate or charge is the same for voluntary and involuntary prepayments, disclosure of the one rate is sufficient.

The fact that "disclosure" was the issue in *McDaniel* instead of the issue being the different treatment as between prepayment and acceleration as contended by the majority is illustrated by the opening sentence in the en banc opinion in that case:

> We here reconsider en banc the rule of *Martin v. Commercial Securities Co.*, 539 F.2d 521 (5th Cir. 1976), that neither an acceleration clause nor the lender's rebate policy with respect to acceleration clauses must be disclosed under the Truth-in-Lending Act (the Act).

*McDaniel, supra*, at 949 (footnote omitted).

The facts in the case *sub judice* show that a borrower received one rebate when acceleration occurred from default and a lesser amount when voluntarily prepaying the loan. The issue here then is controlled by Part III of *Milhollin*, not Part II.